MAUST, Appellant,

Maust, Appellee,

v.

BANK ONE COLUMBUS, N.A. et al., Appellees and Cross–Appellants.

[Cite as *Maust v. Bank One Columbus, N.A.* (1992), 83 Ohio App.3d 103.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–122.

Decided Sept. 15, 1992.

*McCarthy, Palmer, Volkema & Becker* and *Robert G. Palmer,* for appellant and appellee.

*J. Michael Ozier* and *Eloise Gries Cookson,* for appellees and cross-appellants.

PETREE, Judge.

Plaintiff, Allan B. Maust, appeals from the Franklin County Court of Common Pleas, which granted summary judgment to defendant Bank One Columbus, N.A. ("Bank One") and the individual defendants involved in the termination of plaintiff's employment from the bank.[1] The trial court found that plaintiff's claims stemming from his termination were preempted and precluded by operation of the National Bank Act, Section 24 (Fifth), Title 12, U.S.Code. While plaintiff has challenged this ruling on appeal, we find that plaintiff signed a valid release barring his claims in any event. Consequently, we must rule in favor of defendants on their cross-appeal and affirm the judgment of the common pleas court.

## I

Plaintiff worked as a Cash Management Officer at Bank One selling cash management services to corporate customers from 1985 until October 1986 when he was forced to resign. In a meeting on October 17, 1986, his supervisor, Bruce Burton, told plaintiff that because of his poor performance the bank was offering him the opportunity to resign his position or be fired from it. Executive Vice President of Personnel, Michael Hager, told plaintiff that this was "the end of the road for you at Bank One, Allan." At this meeting, Hager offered plaintiff a document entitled "Termination Agreement and Release," which provided plain-

---

1. The individual defendants are Robert T. Whetzel, David W. Voris, Bruce E. Burton, and Michael W. Hager.

tiff with one month's worth of severance pay and employee benefits in exchange for his resignation and the release of any claims related to his employment. Plaintiff was upset and felt "very intimidated." He told Hager that he did not understand the agreement and refused to sign it. He also told the bank personnel that he felt he was being discharged "wrongfully" and that they were placing him in a "precarious financial position." Nevertheless, Hager gave him five days to consult with an attorney and consider the offer.

Plaintiff was distraught over the grave financial consequences that would result if he did not have any income between jobs. Only a year before this, he had uprooted from Texas to work at Bank One and his wife had still not secured a job. Further, on October 17, the bank froze his $15,000 line of personal credit and blocked his ability to use the account. After discussing the offer with his wife, plaintiff met with the bank personnel a few days later. Initially, he indicated that he would not sign the agreement and asked, "why shouldn't I take this to a lawyer?" This enraged Hager, who told plaintiff that he should go ahead and get a lawyer because the bank would " * * * fight you right down the line. You have no money, no means, nothing * * *. You will hurt yourself." Hager said the bank would fight plaintiff " * * * financially, in court, whatever you want." Hager then angrily ripped up the severance agreement and threw it in the trash. Though plaintiff did not feel physically threatened, he said Hager " * * * threatened me with go ahead, get a lawyer, you do what you want, we will bury you, basically." Plaintiff interpreted this as meaning that " * * * we can hound you. Bank One is a large firm. They have a long reach." He understood this to mean that if he did not sign the agreement then Hager would come after him. He took the threat seriously and was afraid because he felt that Bank One was powerful in the community and had ties to most organizations. Hager himself was in charge of thirteen thousand bank employees.

Immediately after this threat, plaintiff apologized to Hager and said that he would sign the agreement. Hager produced another copy of the agreement shortly thereafter. Plaintiff asked if he could sign the agreement with the notation "under duress," but Hager instructed him to put nothing else on it. Plaintiff then signed it as it was written. He said he did so because of " * * * the threat of Mr. Hager and the financial ruin of myself personally and his tearing up the initial termination severance agreement * * *." Thereafter, plaintiff was paid one month of severance pay and thirteen days of unused vacation pay, he was provided extended employee benefits, and he was given a letter of reference by Hager.

Bank One personnel portrayed a different version of the events. They said that at the October 22, 1986 meeting, plaintiff was the person who was angry and making threats. Hager said plaintiff threatened him with a lawsuit about the

resignation. Hager felt that plaintiff was toying with him and trying to bargain for more severance pay. Indeed, Hager acquiesced in plaintiff's request for reimbursement of vacation pay and for a letter of reference. Hager admitted that he got angry when plaintiff kept making demands and would not sign the agreement.

Plaintiff filed the instant suit on September 29, 1989, alleging various contract and tort claims arising out of his termination. Bank One denied liability and moved for summary judgment on the basis of the October 1986 release. Plaintiff then claimed that the release was procured by fraud and signed under duress. When defendants made an issue of plaintiff's failure to tender back the consideration paid to him, plaintiff deposited $4,000 into court. The trial court denied the motion for summary judgment predicated on the terms of the release, stating that the court was unable to conclude that there were no genuine issues of material fact to be tried.

## II

·Given these facts, defendants present the following assignment of error in their cross-appeal:

"The trial court erred in denying, by Decision of January 21, 1991, Appellees' Motion for Summary Judgment seeking dismissal of all claims relating to Appellant's employment based upon his release of claims executed in October 1986."

The resolution of this issue turns on whether plaintiff can claim that the release was procured by fraud or signed under duress in this summary judgment case. Under Civ.R. 56, summary judgment is a procedural device designed to terminate litigation and to avoid a formal trial where there is nothing left to try. *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 2,·24 O.O.3d 1, 2, 433 N.E.2d 615, 616. It must be awarded with caution, resolving any doubts and construing all the evidence against the moving party. *Id.* It should be granted only when there is no genuine issue of material fact to be tried, when the moving party is entitled to judgment as a matter of law, and when it appears that reasonable minds can only reach an adverse conclusion regarding the nonmoving party's case. *Harless v. Willis Day Warehouse Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. An appellate court applies these same standards when reviewing a trial court's grant or denial of summary judgment. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199.

## A

Plaintiff first maintains that the October 1986 release was procured by fraud in the factum or fraud in the inducement. Plaintiff's arguments are

meritless. Plaintiff cannot claim fraud in the factum because he knew he was signing a release on October 22, 1986. He does not claim that any tricks or devices were used to get him to sign the paper. In fact, this document is titled as a release. Further, he admitted that he read it and considered consulting an attorney, but he simply chose not to do so and instead discussed it with his wife. At the time, plaintiff was a thirty-five-year-old college graduate with an extensive resume of work experience in the business world. Further, the language of this release is clear. Plaintiff cannot claim fraud in the inducement. His assertion that he was induced to sign the agreement by virtue of defendants' fraudulent oral assurances that Bank One would not contest a future unemployment compensation claim is directly controverted by the agreement itself, which states that the bank reserves the right to vigorously oppose such a claim. Plaintiff's attempt to contradict this explicit language is plainly barred by the parol evidence rule. *Busler v. D & H Mfg., Inc.* (1992), 81 Ohio App.3d 385, 611 N.E.2d 352; *AmeriTrust v. Murray* (1984), 20 Ohio App.3d 333, 335, 20 OBR 436, 438, 486 N.E.2d 180, 183. Moreover, plaintiff's characterization of the whole arrangement as a "fraud," because he never really wanted to resign and was simply being fired, is of no import here. Plaintiff agreed to resign and the only bona fide legal issue concerning his agreement is whether it was signed under duress.

## B

As the Supreme Court of Ohio recognized in *Blodgett v. Blodgett* (1990), 49 Ohio St.3d 243, 551 N.E.2d 1249, the law of duress as a reason to avoid a contract has evolved to encompass not only physical compulsion but economic compulsion as well. *Id.* at 246, 551 N.E.2d at 1251, citing 1 Restatement of the Law 2d, Contracts (1981), Section 176, Comment *a.* Hence, economic duress may be shown where the person claiming duress was subjected to improper threats which deprived that person of any reasonable alternative but to assent to the terms of the person making the threat. *Id.; Tallmadge v. Robinson* (1952), 158 Ohio St. 333, 49 O.O. 206, 109 N.E.2d 496. This is a subjective test which takes into consideration the physical and mental condition of the person being subjected to the threat. *Id.*

Generally, a threat to do what one is legally entitled to do is not an improper threat. *Dehlendorf v. Markborough Properties Ltd.* (Jan. 5, 1989), Franklin App. No. 88AP–767, unreported, 1989 WL 720.[2] Taking advantage of

---

2. The Restatement of Contracts 2d further defines "improper threats" in Section 176 as follows:
    "(1) A threat is improper if

another's financial difficulty does not constitute duress either. *Blodgett, supra,* 49 Ohio St.3d at 246, 551 N.E.2d at 1251. Rather, the person claiming duress must show that the person making the threats caused or contributed to the alleged financial straits. *Id.* In other words, a person cannot claim that he had no reasonable alternative but to accept an offer on the ground that he did not have sufficient funds to refuse. Further, to have to choose between resigning or being fired " * * * may constitute an unpleasant choice, but absent other compelling circumstances that instance can hardly be viewed as constituting duress. * * * " *Romoser v. Amweld Bldg. Products, Inc.* (Feb. 15, 1991), Trumbull App. No. 89–T–4307, unreported, at 4, 1991 WL 18656.

■ Here, plaintiff has testified that he feared he would be ruined financially if he did not sign the release. Of course, he cannot claim that he was under duress because he needed severance pay. His desperate need for severance pay—that is, his lack of resources to fund a job search in the event of a termination or separation—did not flow from Bank One's actions (except to the extent that the bank wrongfully cancelled his line of credit). But in any event the allegations of financial ruination go further than that here. Plaintiff testified that the bank was threatening to come after him and ruin him financially. He feared that the bank could exert its influence in the community to prevent him from getting a job or credit and that the bank had the means to do so. He claims that the bank used this threat to extort the release from him.

Though the parties dispute what was said and what was meant in this connection, if we take plaintiff's testimony as true and construe all inferences in his favor, we must conclude that the bank's threat was improper and sufficient to create a genuine issue of fact concerning duress here. Defendants' version of the facts could support a factual finding that the bank merely intended to vigorously defend any suit brought by plaintiff. However, plaintiff's version of the facts could support a factual finding that the bank sought to ruin him if he did not sign the release. Indeed, plaintiff's version appears to be identical to Illustration 12 of Section 176 of the Restatement of Contracts 2d, which provides:

---

"(a) what is threatened is a crime or a tort, or the threat itself would be a crime or a tort if it resulted in obtaining property,

"(b) what is threatened is a criminal prosecution,

"(c) what is threatened is the use of civil process and the threat is made in bad faith, or

"(d) the threat is a breach of the duty of good faith and fair dealing under a contract with the recipient.

"(2) A threat is improper if the resulting exchange is not on fair terms, and

"(a) the threatened act would harm the recipient and would not significantly benefit the party making the threat,

"(b) the effectiveness of the threat in inducing the manifestation of assent is significantly increased by prior unfair dealing by the party making the threat, or

"(c) what is threatened is otherwise a use of power for illegitimate ends."

"12.   A makes a threat to B, his former employee, that he will try to prevent B's employment elsewhere unless B agrees to release a claim that he has against A.  B, having no reasonable alternative, is thereby induced to make the contract. If the court concludes that the attempt to prevent B's employment elsewhere would harm B and would not significantly benefit A, A's threat is improper and the contract is voidable by B."

Hence, the trial court was correct in finding a genuine issue of material fact in this regard.  However, the same cannot be said of the issue raised by defendants in this case concerning tender back of the consideration.

## C

A release procured by fraud in the inducement or through duress by threat is merely voidable.  *Haller v. Borror Corp.* (1990), 50 Ohio St.3d 10, 15, 552 N.E.2d 207, 211.  Hence, to overcome the operation of the release, the releasor must allege that the consideration for the release was returned or tendered back to the releasee.  *Id.* at 13, 552 N.E.2d at 210; *Manhattan Life Ins. Co. v. Burke* (1903), 69 Ohio St. 294, 70 N.E. 74.  While this rule appears to have its roots in ancient common-law doctrines not entirely consistent with today's liberal pleading and practice rules, the Supreme Court of Ohio has nevertheless continued to adhere to it.  See *Haller, supra.*  Hence, we are not at liberty to abandon it in this case.

Plaintiff admittedly did not tender back the consideration for the release prior to bringing this suit.  Instead, after defendants raised the issue on summary judgment, plaintiff deposited the money in court pursuant to a court entry.[3]  We have not found a single case authorizing such a procedure in Ohio and plaintiff has not provided us with one.  We find that tendering the consideration to the court is not the same as tendering back the consideration to the defendants.  Obviously, defendants are deprived of the use of such funds pending the suit while plaintiff has correspondingly enjoyed the benefits of the contract which he ostensibly seeks to disaffirm.  Since plaintiff failed to tender back the consideration for the release prior to suit in this case, he is precluded from rescinding it.  *Haller, supra; Romoser, supra,* at 5.  Consequently, plaintiff's claims here are barred by a valid release executed in favor of defendants.

---

3.   The entry stated that the money was plaintiff's " * * * tender of termination [*sic* ] from the Termination and Release Agreement between the parties in October 1986.  Said funds to be held by this court until further ordered."   In an accompanying affidavit, plaintiff requested the court to return the money to him if the court found that he was bound by the release agreement.

Accordingly, defendants' assignment of error is sustained, plaintiff's assignments of error are therefore moot and we need not consider them. The judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

McCORMAC and DESHLER, JJ., concur.