Plaintiffs-appellants, husband and wife, Charles and Barbara Thomas, appeal from a judgment of the Franklin County Court of Common Pleas granting the summary judgment motion of defendant-appellee, Farmers Insurance of Columbus, Inc. ("Farmers").
This appeal arises out of a hit-and-run incident which occurred on March 16, 1996, wherein Mark Rittner intentionally drove his automobile over Charles Thomas. Charles Thomas was severely and permanently injured in the incident. The insurer of Rittner's automobile denied coverage.
At the time of the incident, the Thomases were covered by two, substantially identical automobile insurance policies issued by Farmers. One of the policies listed Charles Thomas as the named insured, and the other listed Barbara Thomas as the named insured. Both policies provided uninsured motorist coverage in the amount of $100,000 for "each person," and $300,000 for "each occurrence."
Following the hit-and-run incident, the Thomases made separate uninsured motorist claims against their respective insurance policies. Charles Thomas presented a claim for his bodily injury, and Barbara presented a loss of consortium claim for her damages arising out of Charles' injuries. Farmers responded with an offer to pay $100,000 under Charles' policy, arguing that $100,000 was the limit of coverage under the combined policies. According to Farmers, because both Charles' and Barbara's claims arose out of Charles' bodily injury, the claims constitute a single claim, subject to the $100,000 each person liability limitation contained in both policies,[1] and the "anti-stacking" provisions in the policies prohibit the Thomases from "stacking" the two policies to recover the $100,000 each person limitation under both. The Thomases accepted the $100,000 offered by Farmers under Charles' policy.
Subsequently, the Thomases brought the instant action against Farmers to recover an additional $100,000 under Barbara's policy. Both parties moved for summary judgment and, on May 29, 1998, the trial court filed a decision and entry granting Farmers' motion for summary judgment and denying the Thomases' motion for summary judgment. The Thomases have appealed from that decision and entry assigning the following error:
 THE TRIAL COURT ERRED BY GRANTING FARMER'S INSURANCE OF COLUMBUS, INC.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT.
In reviewing a trial court's disposition of a summary judgment motion, an appellate court applies the same standard applied by the trial court. Maust v. Bank One Columbus, N.A. (1992), 83 Ohio App.3d 103, 107. An appellate court reviews a summary judgment disposition independently and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. Before summary judgment may be granted under Civ.R. 56(C), the trial court must determine that: "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." State ex rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511, citing Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously, with any doubts resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-359.
The resolution of the dispute in the present case turns on the meaning of an anti-stacking provision which appears in the uninsured motorist sections of the insurance policies sold to the Thomases by Farmers. An insurance policy is, in fact, a written contract and, as such, must be construed in accordance with the same rules as other written contracts. Gomolka v. State Auto. Mutl. Ins. Co. (1982), 70 Ohio St.2d 166, 167. Thus, in reviewing an insurance policy, the words and phrases used therein must be given their plain and ordinary meaning where possible. Id. To the extent that the language of an insurance policy is clear and unambiguous, it is unnecessary and impermissible for a court to resort to construction of that language. Id. However, where the language in an insurance policy is ambiguous and susceptible of more than one meaning, it will be liberally construed in favor of the insured and strictly against the insurer who drafted the policy. Derr v. Westfield Cos. (1992), 63 Ohio St.3d 537, 542. In determining whether language in an insurance policy is ambiguous, the words of the policy must be given the ordinary meaning they would have to the average consumer. Enyart v. Nationwide Mut. Ins. Co. (Dec. 15, 1994), Cuyahoga App. No. 66403, unreported.
The anti-stacking provision at issue provides as follows:
 If any applicable insurance other than this policy is issued to you by us or any other member company of the Farmers Insurance Group of Companies, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability.
The Thomases concede that R.C. 3937.18(G)[2] permits insurance companies to include anti-stacking provisions in their policies. However, the Thomases contend that the anti-stacking provision contained in the uninsured motorist sections of their policies is ambiguous. Notably, the Thomases do not argue that the anti-stacking provision is ambiguous such that they may stack the $100,000 each person limits in their two policies to obtain up to $200,000 from Farmers. Rather, the Thomases argue that the anti-stacking provision is ambiguous with respect to whether the $100,000 each person limit of liability, or the $300,000 each occurrence limit of liability, constitutes the "highest limits of liability." Given this ambiguity, the Thomases continue, the anti-stacking provision must be construed to permit them to recover up to the higher $300,000 each occurrence limit.
The Thomases assert that the anti-stacking provision can reasonably be read to allow them to recover under the higher each occurrence limit of liability despite the fact that they have not challenged the trial court's determination that their claims constitute a single claim subject to the each person limit of liability. Specifically, the Thomases contend that, because the anti-stacking provision does not provide that "the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest [applicable] limits of liability," the provision can reasonably be read to provide that "the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability [contained anywhere in the policy]."
Farmers respond that inclusion of the word "applicable" in the phrase "highest limits of liability" is unnecessary. According to Farmers, when the anti-stacking provision is read in pari materia with the balance of the uninsured/underinsured motorist portion of the policy, a reasonable person could only understand the phrase "highest limits of liability" in the anti-stacking provision to refer to either the highest each person limit of liability, or the highest each occurrence limit of liability contained in an insured's several policies, depending upon the limit that governs the insured's claim or claims. Here, given the trial court's unchallenged conclusion that the Thomases' claims are collectively subject to the each person limit of liability, the anti-stacking provision cannot reasonably be construed to permit the Thomases to recover up to the higher each occurrence limit. We agree.
The "Limit of Liability" provisions in the uninsured/underinsured motorist portion of the policy provide as follows:
 The limits of liability shown in the Declarations apply subject to the following:
 1. The limit for "each person" is the maximum for bodily injury sustained by any person in any one accident. Any claim for loss of consortium or injury to the relationship arising from this injury shall be included in this limit.
 2. Subject to the limit for "each person," the limit for "each accident" is the maximum for bodily injury sustained by two or more persons in any one accident.
 3. Subject to the law of the state of the occurrence, we will pay no more than these maximums regardless of the number of vehicles insured, insured persons, claims, claimants, policies, or vehicles involved in the accident. [Emphasis sic.]
These provisions create a scheme of liability which places clearly defined limits on Farmers' liability arising out of any one accident. The concept that Farmers' liability for damages arising out of one bodily injury sustained in one accident is limited to the each person limit of liability is a key part of this scheme. The Thomases' reading of the anti-stacking provision plainly conflicts with this scheme, in that it would make Farmers liable for a single bodily injury up to the higher per occurrence limit of liability. Such a reading of the anti-stacking provision is not reasonable when the provision is read in the context of the uninsured motorist coverage as a whole.
Accordingly, the Thomases' assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
PETREE, J., concurs.
[1] The trial court determined that both claims were subject to the each person liability limitation contained in the Thomases' policies, and the Thomases have not appealed that decision.
[2] R.C. 3937.18(G) provides:
 (G) Any automobile liability or motor vehicle liability policy of insurance that includes coverages offered under division (A) of this section or selected in accordance with division (C) of this section may, without regard to any premiums involved, include terms and conditions that preclude any and all stacking of such coverages, including but not limited to:
 (1) Interfamily stacking, which is the aggregating of the limits of such coverages by the same person or two or more persons, whether family members or not, who are not members of the same household;
 (2) Intrafamily stacking, which is the aggregating of the limits of such coverages purchased by the same person or two or more family members of the same household.
TYACK, J., concurs in part and dissents in part.