OPINION
This is an appeal from a judgment of the Franklin County Court of Common Pleas which granted summary judgment in favor of defendants, Christopher J. Geer, Executor of the Estate of Helmuth W. Engelman, and The Engelman Family Limited Partnership. Plaintiff, Charles E. Taylor, appeals that judgment and sets forth the following assignments of error:
 I. The trial court erred in denying appellant's motion for summary judgment.
 II. The trial court erred in granting appellee's motion for summary judgment.
 III. The trial court deprived appellant of property in violation of the Ohio and United States Constitutions.
 IV. The trial court erred when it concluded as a matter of law that appellant could not recover fees on quasi contract theories of constructive trust and/or quantum meruit.
 V. The trial court erred when it concluded as a matter of law that the contract between appellant and appellee was unenforceable because it illegally restricted appellee's rights to terminate legal services.
 VI. The trial court erred when it concluded as a matter of law that the contingent fee agreement between the appellant and the appellee was unenforceable because it was champertous.
 VII. The trial court erred when it concluded, as a matter of law that the transfer of real estate, in which appellant had a legal interest, from the Helmuth Engleman estate to the Engelman Family Limited Partnership did not constitute a fraudulent conveyance.
 VIII. The trial court erred when it decided the material fact that the appellant did not enhance the value of the property.
In 1982, Helmuth and Jean Engelman were involved in litigation with the Ohio Department of Natural Resources ("ODNR") with regard to the proper location of a boundary line between the Engelmans' property and that of land owned by ODNR. The subject properties are located on the north side of Maple Bay, an inlet of Buckeye Lake. The litigation was resolved by the execution, in the Licking County Court of Common Pleas, of a "Consent Judgment and Entry of Dismissal" ("Consent Judgment"), which directed the Engelmans to convey an eighteen-acre tract of land to ODNR. The Consent Judgment further provided:
 (1) That the Ohio Department of Natural Resources has sole and exclusive legal jurisdiction over Buckeye Lake and Maple Bay.
 (2) That the Engelmans and their successors in title are permitted access to Maple Bay from the property described in Deed Book 756, Page 621 of the Records of the Recorder of Licking County, Ohio.
 (3) That if at some future time the Engelmans, or their successors in title, desire to construct a boat dock or pier for boat access from their shoreline property into Maple Bay (no such dock or pier being presently in existence), the Engelmans, or their successors in title, shall not construct such a dock or pier without prior written approval of the Ohio Department of Natural Resources, Division of Park [sic] and Recreation. In this regard, it is understood and agreed to by the Engelmans and the Ohio Department of Natural Resources that should such prior written approval be sought and granted, boat access to Maple Bay by the Engelmans or their successors in title from the subject shoreline property shall be limited to entry from the approved dock or pier.
 (4) That the Ohio Department of Natural Resources specifically disclaims any obligation to the Engelmans, or their successors in title, to dredge or in any other way improve Maple Bay so as to maintain, enhance or improve said Maple Bay for boating purposes, and that the Engelmans waive any rights to such maintenance, enhancement, or improvements.
Thereafter, in the late 1980's, plaintiff, at the time a licensed attorney, began scaling down his law practice in order to concentrate on real estate development. By 1989, plaintiff had devised the "Maple Bay Hills Village Development Master Plan" to develop four adjacent farms on the north side of Maple Bay. Plaintiff's development plan called for the cutting of channels from Maple Bay into the four properties in order to provide additional waterfront lots with hundreds of docks located along the channels. The development plan further provided for hotels, condominiums, commercial space and office buildings on the properties.
During this time, plaintiff met with the Engelmans, the owners of one of the four properties plaintiff sought to develop. Following negotiations, plaintiff and the Engelmans entered into an agreement, the purpose of which, according to plaintiff, was threefold: (1) to pursue plaintiff's development plan for the Engelmans' property; (2) to assist the Engelmans in reacquiring the eighteen-acre tract conveyed from the Engelmans to ODNR under the 1982 Consent Judgment; and (3) to obtain a judicial interpretation of the Engelmans' dredging and pier construction rights under the Consent Judgment. According to plaintiff, the Engelmans desired a judicial interpretation of their dockage and dredging rights because representatives of ODNR had informed them that the Consent Judgment afforded them no such rights. The agreement, entitled "Agreement for Legal Services and Right of First Refusal to Acquire Real Estate," was executed on July 6, 1989, and provided, in pertinent part, as follows:
 WHEREAS, Jean Engleman[1] and Helmuth Engleman, hereinafter referred to as Engleman, are the owners of a tract of land located in Licking Township, Licking County, Ohio; the south portion of which borders on interstate 70 to the north and the State of Ohio on the south * * *; and
 WHEREAS, the tract has been reduced in size by that portion of land appearing on the map to be owned by the State of Ohio in the amount of 18 acres resulting in a depression of their tract's former value, as the result of what the Englemans contend, i.e., that the 18 acres were acquired by the state by fraudulent means; and
 WHEREAS, Charles E. Taylor, hereinafter referred to as Taylor, is an attorney at law, licensed to practice law in the State of Ohio, and has previously acquired an interest in the farm located two farms east known as the Reed farm, and is in negotiations with Wayne and Mary Tresner, the owners of the tract immediately to the west of the Reed farm and which forms the east boundry [sic] of the Engleman tract, and negotiations are contemplated with the Coopers who own the farm to the west of the Englemans; and
 WHEREAS, Taylor is engaged in these acquisitions because the value of each tract will be enhanced or reenhanced in value by concerned efforts in potential annexation, zoning and ultimate development on the basis of such joint cooperation; and
 WHEREAS, the tract that remains in the Englemans' name is agreed to have a present market value of $3,000.00 per acre for purposes of this agreement between the parties; and
 WHEREAS, the 18 acres previously conveyed to the State of Ohio have no known present value to the Englemans unless litigation is instituted and is successful; and
 WHEREAS, Englemans are desirous of initiating litigation to set aside the conveyance of land wrongfully appropriated by the State of Ohio; and
 WHEREAS, the Englemans are desirous of selling any property reacquired by such litigation as well as the balance of the acreage after its agreed market value has been enhanced or reenhanced, by the appropriate rezoning, annexation and site development contemplated by Taylor; and
 WHEREAS, the Englemans do not desire to economically participate in those expenses and costs necessary to be incurred in order to enhance or reenhance the value of the two tracts of land nor to be liable or responsible for any legal fees or other expenses of any kind or description if in fact no enhancement or reenhancement of value occurs as a result of the various legal and other actions and activities contemplated on a joint basis by Taylor; and
 WHEREAS, Taylor is willing to undertake the representation of the Englemans and to otherwise be solely responsible for the expenses and costs in implementing the various proceedings and negotiations necessary to enhance or reenhance the value of the two tracts on a contingent basis;
 NOW, THEREFORE, it is MUTUALLY AGREED by and between Engleman and Taylor as follows:
 Taylor shall perform all the legal services, with the standard degree of skill and care ordinarily employed by attorneys in this or similar communities, and be solely liable for the ancillary expenses incurred in order to obtain the above objectives. He shall hold the Englemans harmless and indemnify them from any expenses incurred in implementing his plans whether such expenses be of a legal or any other nature or classification. It is understood that the litigation may be protracted and t of a long duration.
 Taylor shall handle the litigation and negotiations with the State of Ohio to try to set aside the fraudulent deed by which the State acquired the 18 acres of land. To the extent that Taylor is successful in reacquiring the tract or any portion thereof Taylor shall be compensated by receiving an undivided 40% interest in the property recovered from the State of Ohio. The property will then be sold at its then market value unless otherwise agreed to by the parties.
 In consideration for his services of every kind and description performed in order to enhance the value of the tract of acreage which is currently in the name of the Englemans he shall receive from the proceeds of sale, 40% of the value of the property in excess of the present agreed market value of $3,000.00. If there is no enhancement or reenhancement of value then Taylor shall receive no fee and the property need not be sold.
* * *
 This contract shall remain in full force and effect as long as good faith efforts are being contributed by Taylor in his capacity as an attorney and developer. * * *
 In order to protect the work product of Taylor during the period he is performing the services and in order not to impair the right of the Englemans to sell their property during such period, if they should so desire, it is further agreed that in the event the Englemans decide to sell their interest in the real estate during the duration of this contract, or to cancel or terminate the services of Taylor, then, in that event, Taylor shall have the first right of refusal to meet the terms and conditions of sale that the Englemans offer to any third party. Thirty days written notice shall be given Taylor of any contemplated sale or termination and he shall respond in writing within 30 days as to his election to accept or refuse the terms of sale. * * * In the event of termination, the agreed market value set forth in this contract shall be the purchase price unless otherwise agreed to by the parties.
Pursuant to the terms of the agreement, plaintiff filed an action on behalf of the Engelmans in the Licking County Court of Common Pleas. The lawsuit, taken against ODNR, alleged that the metes and bounds description of the property that was the subject of the 1982 Consent Judgment did not follow the parties' agreed upon boundary line, thereby erroneously giving ODNR eighteen acres more of the Engelmans' property than the parties' intended. The complaint further alleged that ODNR was in breach of the Consent Judgment because it had repudiated the Engelmans' dredging and pier construction rights set forth in that judgment.
A hearing on the Engelmans' complaint was held on September 5, 1991, at which time the parties agreed that the issues to be determined were the proper location of the boundary line between the Engelmans' property and the land claimed by ODNR and whether the Engelmans had the right to dredge and/or construct docks in Maple Bay.
With regard to the boundary dispute, Mr. Engelman, a mechanical engineer, testified that the boundary line as established in the Consent Judgment was incorrect by, in some areas, as much as two hundred fifty feet. In contrast, Bain Simpson, the original surveyor, testified that the boundary line as stated in the Consent Judgment was accurate, having been based upon a survey prepared in accordance with generally accepted methods in the engineering field.
As to the dockage/dredging issue, Mr. Engelman testified that it was his belief that the Consent Judgment granted him the absolute right to construct a dock on Maple Bay and to dredge the Bay in order to gain access to the dock in exchange for conveying the eighteen-acre tract of land to ODNR.
James Hostetter, the attorney who represented the Engelmans at the time they entered into the Consent Judgment, testified that ODNR representatives were aware, prior to entering into the Consent Judgment, that the Engelmans planned to develop Maple Bay and that the development plans called for constructing docks and dredging the channel. According to Mr. Hostetter, the agreement to allow a dock for the development of the Engelmans' property and access from the Engelmans' property to the dock was in exchange for ODNR receiving the eighteen acres of shoreland and for ODNR having no obligation to dredge the Maple Bay channel.
ODNR presented no evidence regarding the docking/dredging issue. However, counsel for ODNR argued that the Consent Judgment did not grant the Engelmans any dredging rights. Further, citing the "prior written approval" language contained in the paragraph pertaining to dock construction, counsel argued that ODNR had the right to deny approval for dock construction.
By judgment entry dated September 10, 1991, the Licking County Court of Common Pleas found that the Engelmans had failed to establish that the boundary line described in the Consent Judgment was not the line agreed upon by the parties in 1982. As to the dockage/dredging issue, the court found as follows:
 This court finds that the quid pro quo for the plaintiffs' giving to the State of Ohio the land in question was the receipt of the right to construct a dock and access to that dock. In addition, the plaintiffs are permitted to dredge the Maple Bay channel and the State of Ohio has no obligation in that regard. The written approval language applies only to the size and design of the dock not to the right to construct it.
 * * * [P]laintiffs negotiated the right and the State of Ohio granted to the plaintiffs as a result of those negotiations the right to construct a dock in the Maple Bay area of Buckeye Lake and to have access to that dock. Further, the plaintiffs may conduct dredging operations in Maple Bay at their own expense. The State of Ohio has no obligations in that regard.
The decision of the common pleas court was affirmed on appeal; the Ohio Supreme Court denied jurisdiction in January 1993. Plaintiff performed no further legal services for the Engelmans after that date.
Mrs. Engelman died in September 1993. Although plaintiff believed that Mrs. Engelman's death terminated the July 6, 1989 agreement, thereby entitling him to purchase the Maple Bay property under the terms of the agreement, he did not assert a claim against the estate because Mr. Engelman told him he wanted the chance to sell the property. According to plaintiff, he agreed to forego his claim in exchange for Mr. Engelman's promise to remain bound to the terms of the July 6, 1989 agreement, including plaintiff's right to exercise the option to purchase the property at the price set forth in the agreement, in the event the property remained unsold.
By late 1996, the property had not been sold. Mr. Engelman was terminally ill. He discussed his estate plans with his daughters, including the disposition of the Maple Bay property. Pursuant to his daughters' expressed desire to keep the Maple Bay property after his death, Mr. Engelman decided to transfer the property to a limited partnership along with sufficient funds to pay the property's taxes and upkeep. After the necessary documents were prepared, Mr. Engelman transferred the property to the newly created Engelman Family Limited Partnership on May 14, 1997. He died the following day.
On December 15, 1997, plaintiff filed a claim against Mr. Engelman's estate, asserting that the May 14, 1997 transfer terminated his services under the July 6, 1989 agreement. Accordingly, plaintiff asserted that he was entitled to invoke his right to purchase the Maple Bay property under the terms of the agreement. By letter dated January 5, 1998, defendant Christopher Geer, executor of Mr. Engelman's estate, denied plaintiff's claim.
On January 30, 1998, plaintiff filed a complaint in the Franklin County Court of Common Pleas, asserting that the May 14, 1997 transfer of the property to the Engelman Family Limited Partnership constituted a termination of the July 6, 1989 agreement which triggered his right to purchase the property for the price set forth in the agreement. Plaintiff further maintained that he had fulfilled his obligations under the agreement by enhancing the value of the Engelmans' property via the judicial determination of the Engelmans' right to construct a boat dock on their Maple Bay property and dredge an access from the property to Buckeye Lake. Plaintiff further asserted that the May 14, 1997 transfer of the property constituted a fraudulent conveyance under R.C. Chapter 1336. In the alternative, plaintiff claimed that he was entitled to relief under the doctrine of quantum meruit.
Both plaintiff and defendants filed motions for summary judgment on April 15, 1999. By decision filed December 9, 1999, the trial court granted defendants' motion for summary judgment. The trial court concluded that plaintiff could not recover under the July 6, 1989 agreement because it was champertous and illegally restricted defendants' right to terminate plaintiff's services. The court further found that plaintiff's quantum meruit and fraudulent conveyance claims failed as a matter of law because he failed to perform the obligations set forth in the agreement. On December 22, 1999, the trial court overruled plaintiff's motion for summary judgment. The trial court's decisions were formalized by journal entry dated January 13, 2000.
Although plaintiff advances eight assignments of error, his arguments address only the following issues: whether the trial court erred in determining that the July 6, 1989 agreement was unenforceable as champertous and an illegal restriction on the Engelmans' right to freely terminate plaintiff's services; whether the trial court erred in determining that plaintiff failed to perform his obligations under the July 6, 1989 agreement; and whether the trial court erred in determining that plaintiff's quantum meruit and fraudulent conveyance claims failed as a matter of law.
Civ.R. 56(C) provides, in relevant part, as follows:
 * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to be one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *
Thus, summary judgment is appropriate only where the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. Tokles Son, Inc. v. Midwestern Idemnity Co. (1992), 65 Ohio St.3d 621, 629, citing Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,65-66.
"[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record * * * which demonstrate the absence of a genuine issue of material fact on a material element of the nonmoving party's claim."Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. Once the moving party meets the initial burden, the nonmoving party must then set forth specific facts showing that there is a genuine issue for trial. Id.
In reviewing a trial court's disposition of a summary judgment motion, an appellate court applies the same standard as that applied by the trial court. Maust v. Bank One Columbus, N.A. (1992), 83 Ohio App.3d 103, 107. An appellate court reviews a summary judgment disposition independently and without deference to the trial court's determination. Brown v. SciotoCty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously, with any doubts resolved in favor of the nonmoving party.Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-359.
As noted previously, plaintiff's first two arguments challenge the trial court's finding that plaintiff's agreement with the Engelmans is unenforceable because it is champertous and illegally restricted the Engelmans' right to terminate plaintiff's services. We need not determine those issues, however, because even if the agreement was enforceable, plaintiff would not be entitled to recovery because he failed to fulfill his obligations under the agreement.
In order to recover on a contract, a plaintiff must prove that he or she performed the obligations under the contract. American Sales, Inc.v. Boffo (1991), 71 Ohio App.3d 168, 175. Plaintiff's obligations under the agreement involved recovering the land improperly taken by ODNR and/or enhancing the value of the Engelmans' remaining Maple Bay property. Plaintiff concedes that he was unsuccessful ineither recovering the land from ODNR or in enhancing the value of the Engelmans' property through development efforts. Plaintiff asserts, however, that he enhanced the value of the property by "winning" the right to construct a boat dock and dredge an access from the dock to the waters of Buckeye Lake. Plaintiff's argument mischaracterizes the outcome of the action he filed on behalf of the Engelmans in the Licking County Court of Common Pleas. As noted previously, the lawsuit sought, inter alia, a judicial interpretation of the Engelmans' pier construction and dredging rights under the 1982 Consent Judgment. The trial court's decision merely affirmed that the 1982 Consent Judgment granted the Engelmans the right to construct a dock on their property and dredge a channel through Maple Bay to Buckeye Lake. The decision afforded the Engelmans no additional or different rights than they previously had under the Consent Judgment. Because the trial court's decision provided the Engelmans exactly the same rights they had before plaintiff initiated the Licking County litigation, we cannot agree with plaintiff's contention that he "won" dockage and dredging rights for the Engelmans and thereby enhanced the value of their property. The agreement provides that "if there is no enhancement * * * of value * * * [plaintiff] shall recover no fee." Pursuant to both American Sales, supra, and the express terms of the agreement, plaintiff cannot recover under the agreement because he failed to perform the obligations set forth therein.
Since the contingencies in the agreement were unfulfilled, plaintiff'squantum meruit and fraudulent conveyance claims also fail as a matter of law. With regard to plaintiff's quantum meruit claim, we note that inReid, Johnson, Downes, Andrachik Webster v. Lansberry (1994),68 Ohio St.3d 570, the Ohio Supreme Court held at paragraph two of the syllabus: "When an attorney representing a client pursuant to a contingency-fee agreement is discharged, the attorney's cause of action for a fee recovery on the basis of quantum meruit arises upon the successful occurrence of the contingency." In reaching this conclusion, the court reasoned that "[u]nder this approach, in most situations the discharged attorney is not compensated if the client recovers nothing."Id. at 575. Pursuant to Reid, plaintiff's cause of action on the basis ofquantum meruit depends upon the successful occurrence of at least one of the underlying contingencies, i.e., recovery of the eighteen-acre tract and/or enhancement of the value of the Engelmans' property. Since the underlying contingencies failed to occur, plaintiff is not entitled to recovery under quantum meruit.
Finally, with regard to plaintiff's contention that Mr. Engelman's transfer of the property to the limited partnership constituted a fraudulent conveyance under R.C. Chapter 1336, we note that plaintiff is not a "creditor" of Mr. Engelman's estate. A "creditor" is defined as "a person who has a claim." R.C. 1336.01(D). A "claim" means a "right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." R.C. 1336.01(C). Because we have concluded that plaintiff did not fulfill his obligations under the agreement and is thus not entitled to any recovery, he has no claim against the estate; therefore, he may not properly question the transfer of the property from the estate to the limited partnership under the theory of fraudulent conveyance.
For the foregoing reasons, this court finds that the trial court correctly granted summary judgment in favor of defendants, as no genuine issues of material fact exist and defendants are entitled to judgment as a matter of law. Accordingly, plaintiff's assignments of error are overruled.
Having overruled plaintiff's assignments of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas.
LAZARUS and KENNEDY, JJ., concur.
[1] The correct spelling of this name throughout the agreement should be Engelman.