OPINION
{¶ 1} Plaintiff-appellant, U.S. Bank, N.A., (formerly known as Firstar Bank, N.A.), appeals from the March 5, 2004 decision and entry of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Huntington National Bank, and denying plaintiff's motion for summary judgment.
 {¶ 2} Hook and Motter, Inc., dba Dublin Auto Sales ("Dublin Auto"), sold and leased used motor vehicles. Dublin Auto arranged financing for its sales and leases with plaintiff pursuant to a "Dealer Agreement." According to the Dealer Agreement, Dublin Auto assigned its customers' installment sales contracts to plaintiff. To facilitate these transactions, plaintiff provided Dublin Auto with blank "sight" drafts drawn on plaintiff's account with First Union National Bank. Dublin Auto filled in the amount of the assignment and deposited the draft in its checking account with defendant. When Dublin Auto presented the draft for payment, it warranted that the draft represented a legitimate transaction.
 {¶ 3} In late 2001 and early 2002, Dublin Auto deposited 18 fraudulent drafts into its account with defendant. Among the 18 were drafts 1224373 and 1224374, totaling $88,622. Defendant provisionally credited Dublin Auto's account for the 18 items and presented the drafts to plaintiff for payment. Plaintiff did not return the items to defendant by midnight of the following banking day, nor did it advise defendant that it intended to dishonor the items by midnight of the following banking day. Pursuant to R.C. 1304.25 and 1304.28(A)(1), when plaintiff failed to take either of these actions before expiration of the "midnight deadline," each of the 18 items was "finally paid" by plaintiff. In other words, plaintiff became strictly liable for each of 18 items, whether properly payable or not, when it did not return the items or send notice of dishonor within the statutory timeframe.
 {¶ 4} After the "midnight deadline" expired, plaintiff discovered the fraud and attempted to make "late return" of seven of the 18 fraudulent drafts. These seven drafts totaled $280,953.89. Pursuant to defendant's computerized posting process, the seven drafts were automatically charged back to Dublin Auto's account, creating an overdraft of $111,418.77. Realizing that plaintiff had improperly returned the seven items, defendant prepared to reject plaintiff's "late return" of the items. Plaintiff's representative, Mark Flowers, contacted defendant's representative, Julie Verne Orr, regarding the fraudulent assignments. The two negotiated an agreement to recover some of the fraudulently deposited funds. The agreement was executed on April 17, 2002, and provided, in pertinent part:
Both parties agree that upon receipt of electronically transferred funds from Firstar Bank N.A. in the amount of $104,483.78, Huntington National Bank will not return any of the Firstar drafts identified below. A listing of known drafts is outlined below, however this agreement includes any other items received and already paid by Huntington National Bank as of the effective date of this agreement.
 {¶ 5} Immediately below this paragraph, the agreement listed 18 draft numbers, including drafts 1224373 and 1224374. Seven of the 18 were marked with asterisks denoting drafts in defendant's possession. Drafts 1224373 and 1224374 were not among the seven drafts marked with an asterisk.
 {¶ 6} The agreement further provided:
Firstar Bank N.A. will present funds to Huntington National Bank upon execution of this agreement. Upon receipt of those funds, Huntington National Bank will present Firstar Bank N.A. with the seven drafts in their possession (as noted above.) Both parties also agree that no further recourse will be pursued in regards to these items.
 {¶ 7} Plaintiff paid the $104,483.78 to defendant pursuant to the terms of the contract. Defendant applied the $104,483.78 to the overdraft caused by the "late return" of the seven items and zeroed out Dublin Auto's account balance. On April 18, 2002, one day after the contract was executed, plaintiff attempted the "late return" of drafts 1224373 and 1224374, causing Dublin Auto's account to overdraft in the amount of $88,622. Defendant rejected the April 18, 2002 "late return" and sent the items back to plaintiff, thus curing the overdraft.
 {¶ 8} On October 11, 2002, plaintiff filed a complaint against defendant alleging that defendant breached the contract by returning drafts 1224373 and 1224374. Plaintiff demanded judgment against defendant in the amount of $88,622, plus interest and costs.
 {¶ 9} Following the filing of defendant's answer, the case proceeded to a pre-trial conference. The trial court's "Case Management Order" indicates that at the pre-trial conference, the trial court instructed the parties to submit trial briefs for the court's consideration. Plaintiff filed a brief without supporting evidence; defendant filed a brief accompanied by evidentiary materials. Upon review of the parties' briefs, the trial court determined that the parties disputed the facts. Accordingly, the court ordered the parties to file cross-motions for summary judgment.
 {¶ 10} In its motion for summary judgment, plaintiff contended that defendant breached the contract when it returned drafts 1224373 and 1224374. Plaintiff maintained that the contract clearly and unambiguously provided that in exchange for the $104,483.78, defendant agreed not to return any of the 18 items identified in the contract, including the two drafts at issue, even though defendant was aware that it did not have those drafts in its possession when it signed the agreement. Plaintiff supported its motion with Flower's affidavit. Therein, Flowers averred that on April 1, 2002, he informed Orr that plaintiff would be willing to wire $104,783.78 to defendant as long as defendant agreed not to return any drafts of which either was aware, regardless of the status of those drafts and regardless of whether plaintiff's return of the drafts was late. (Flowers' affidavit, ¶ 21.) Flowers further averred that Orr never informed him that defendant's agreement to accept plaintiff's late return of items was limited to the seven items marked with an asterisk in the agreement, and that no such provision was included in the contract. (Id., ¶ 20.) According to Flowers, Orr orally agreed to this arrangement, and, after requesting several revisions to a preliminary draft of the agreement, signed the April 17, 2002 contract. (Id., ¶ 21.)
 {¶ 11} In contrast, defendant argued in its summary judgment motion that plaintiff breached the "no further recourse" provision of the contract when it attempted to return drafts 1224373 and 1224374 after the contract was executed. Defendant maintained that in exchange for the $104,473.78, it agreed not to reject plaintiff's "late return" of only the seven items already in its possession. According to defendant, plaintiff pursued "further recourse" the day after the contract was signed by attempting to return the two challenged drafts. "Because the `return' would have shifted or reallocated accountability for the Items to Huntington when accountability for the Items had already been borne by First Union/US Bank and would have caused a loss to Huntington of $88,662 [sic], the attempted `late return' was inconsistent with the provision of the Contract prohibiting `further recourse'." (Defendant's January 15, 2004 motion for summary judgment, pg. 10.)
 {¶ 12} Defendant further contended that even if the contract could be construed to shift liability or accountability for payment of all 18 items to defendant, such an agreement would be unenforceable under R.C. Chapter 1304. Specifically, defendant argued that, pursuant to R.C. 1304.03 and 1304.27, plaintiff's failure to return the items or provide notice of its intent to dishonor the items before the expiration of the midnight deadline constituted a failure to exercise ordinary care that could not be disclaimed by agreement.
 {¶ 13} Finally, defendant contended that the construction of the contract urged by plaintiff, that is, that defendant agreed not to return any of the 18 items identified in the contract, would lead to an absurd result — that defendant, in exchange for $104,483.78, voluntarily assumed liability for payment of drafts totaling over $717,000, when all of those items had already been "finally paid" by plaintiff pursuant to statute.
 {¶ 14} Defendant supported its motion with Orr's affidavit, which stated that during discussions with Flowers related to the fraudulent transactions, Flowers proposed that plaintiff pay defendant $104,483.78, the approximate amount of the overdraft caused by plaintiff's late return of the seven items already in defendant's possession, provided defendant agreed not to return those seven items to plaintiff. (Orr Affidavit, ¶ 28.) According to Orr, she agreed to allow the seven items to post against Dublin Auto's account and agreed not to return those seven items to plaintiff unpaid provided plaintiff paid defendant the $104,483.78. (Id., ¶ 33.) Orr further stated that the "no further recourse" language was included in the contract because the parties wanted the agreement to finally resolve all issues relating to Dublin Auto's deposit of the 18 items. (Id., ¶ 34.) Orr also stated that the contract listed all known items so that the agreement brought finality to the situation involving Dublin Auto's presentment of fraudulent items to be paid by plaintiff. (Id., ¶ 43.) Orr further averred that the agreement was drafted solely by plaintiff (Id., ¶ 36.)
 {¶ 15} In its decision and entry, the court stated:
The Banks' Agreement does not address what the Plaintiff could nor could not do with the eleven items that remained in its possession. Thus, the Plaintiff argues that its return of the two checks at issue here was not in violation of the contract terms. And, by inference, the Defendant had to accept those late returns since the contract prohibits the Defendant from making return, i.e. charge back Dublin Auto's account, of any items, other than the seven items marked with asterisks that it had already accepted as late returns in exchange for $104,000.
Notwithstanding the Plaintiff's argument, the contract expressly states that neither party may take any further recourse. This phrase "no further recourse" could not be anymore clear. It means that neither party would attempt to recover, return or charge back any of the items listed in the agreement, regardless of who was in possession of them. In other words, once the $104,000 had been electronically transferred to the Defendant, the parties' dealings were complete with respect to the seventeen checks listed in the Banks' Agreement. The absence of any directive to the Plaintiff of what action could be taken on the eleven checks in its possession does not override the agreement to take no further recourse. The "no further recourse" provision is not to be ignored, but rather reconciled with prohibition on Huntington not to return items. * * * (March 5, 2004 Decision and Entry, pg. 6.)
 {¶ 16} Accordingly, the trial court found the contract to be clear and unambiguous and that no issues of fact existed to preclude the court from granting summary judgment. The court found, as a matter of law, that plaintiff breached the contract when it attempted to make late return of the two items at issue in the case, and that defendant did not breach the contract when it rejected the two late returns, as the late return of those items was not contemplated by the contract. The court further determined that defendant was not obligated under the contract to accept any further late returns from plaintiff of the remaining items listed in the agreement.
 {¶ 17} Plaintiff appeals from this judgment, assigning a single assignment of error for our review:
The trial court erred when it entered summary judgment against Plaintiff-Appellant.
 {¶ 18} Because plaintiff's assignment of error arises out of the trial court's ruling on the parties' motions for summary judgment, we review the disposition independently and without deference to the trial court's determination. Brown v. SciotoCty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711, 622 NE.2d 1153. In conducting our review, we apply the same standard as that employed by the trial court. Maust v. Bank One, Columbus,N.A. (1992), 83 Ohio App.3d 103, 107,614 N.E.2d 765.
 {¶ 19} Civ.R. 56(C) provides that summary judgment shall be rendered forthwith if:
* * * [T]he pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *
 {¶ 20} Accordingly, summary judgment is appropriate only where the evidence demonstrates that: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. State ex rel.Grady v. State Emp. Rel. Bd. (1997), 78 Ohio St.3d 181, 183,677 N.E.2d 343. Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously, with any doubts resolved in favor of the nonmoving party. Murphy v.Reynoldsburg (1992), 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138.
 {¶ 21} In its sole assignment of error, plaintiff contends only that the trial court improperly resolved a genuine issue of material fact in determining that plaintiff returned the two items at issue after the contract was executed when there was conflicting evidence to the contrary that required reconciliation by the trier of fact. Plaintiff contends the affidavits of Flowers and Orr conflict on the issue of when plaintiff returned the items to defendant, with Flowers attesting that all 18 items, including the two at issue, were returned prior to the time the contract was executed and Orr attesting that plaintiff did not return the two drafts until after the contract was executed. Plaintiff claims that the trial court improperly resolved this issue in favor of defendant. Plaintiff further claims, based on its characterization of the trial court's interpretation of the contract, that the court's resolution of this issue was the impetus for its conclusion that plaintiff breached the contract. Plaintiff argues that the court would not have determined that plaintiff breached the contract if it had concluded that plaintiff returned the items to defendant before the contract was executed.
 {¶ 22} Initially, we note that although Flowers averred in paragraph 14 of his affidavit that all of the drafts listed in the agreement had been transmitted to defendant as "late returns" before the agreement was signed, plaintiff's motion for summary judgment contradicts that statement. The motion states that the two drafts at issue "were returned by Firstar on April 18, 2002 * * *." (Plaintiff's January 15, 2004 Motion for Summary Judgment, page 3.) In support of this statement, plaintiff cites paragraph 14 of Flowers' affidavit, as well as paragraph 17 of Orr's affidavit, which states that only the seven items marked with an asterisk in the contract were in defendant's possession at the time the contract was signed. In addition, plaintiff stated that the two drafts "were not drafts that Defendant had in its possession when it signed the agreement," that the drafts at issue were "two of the 11 drafts that Defendant knew that it did not have in its possession when it signed and made the agreement not to return any of these drafts to plaintiff," and that the contract plainly stated that the two drafts "were not in the possession of Defendant Huntington on April 17, 2002 when the contract was signed." (Id. at 6-7.)
 {¶ 23} Throughout the trial court proceedings, plaintiff consistently asserted only one theory — that the plain and unambiguous language of the contract required defendant to accept plaintiff's "late return" of all 18 items identified in the contract in exchange for the $104,483.78, regardless of whether those items were in defendant's possession at the time the contract was executed. In support of this theory, plaintiff relied upon Flowers' affidavit, which stated that defendant "agreed to accept the late return of each and every one of the drafts that was listed on the Agreement." (Flowers affidavit, ¶ 19.) Plaintiff further claimed that the parties memorialized that alleged mutual understanding in the contract. Plaintiff did not argue before the trial court that there were two categories of items — those returned before the contract was executed and those returned after the contract was executed — and never argued that items returned before execution of the contract should be treated differently then those returned after execution of the contract. Plaintiff never argued that items returned before the contract was executed were excepted from the "no further recourse" language of the contract. Rather, plaintiff consistently argued that defendant was required to accept "late return" of all 18 items identified in the contract, without distinguishing between items returned before or after execution of the contract.
 {¶ 24} Plaintiff's assignment of error is based on its erroneous characterization of the trial court's interpretation of the contract. Plaintiff claims that the trial court interpreted the contract to mean that plaintiff's "late return" of the items after the contract was executed constituted a breach of the contract. Plaintiff further contends that since the trial court determined that the contract precluded plaintiff from returning the items to defendant after the contract was executed, the trial court impliedly held that the contract permitted plaintiff to make "late return" of items before the contract was executed.
 {¶ 25} In interpreting the contract, the trial court first determined that the contract "does not address what the Plaintiff could or could not do with the eleven items." (Trial court's March 5, 2004 decision and entry, page 6.) The contract plainly stated that the eleven items that were not marked with an asterisk, including the two at issue here, were not in defendant's possession, but did not state whether plaintiff was permitted to return these eleven items to defendant or whether defendant was required to accept plaintiff's attempted late return of those items. The trial court refused to interpret the contract's silence on this issue as permitting plaintiff to make late return of the items to defendant or as requiring defendant to accept late return of the items. Instead, the court looked at the remainder of the contract to determine whether the contract provided further guidance on the issue, pursuant to FarmersNational Bank v. Delaware Ins. Co. (1911), 83 Ohio St. 309,94 N.E. 834 (a court must harmonize all provisions of a contract rather than give effect to one provision to the exclusion of others.)
 {¶ 26} To that end, the trial court focused on the contract's "no further recourse" language. That language, according to the trial court, clearly meant that neither party would attempt to recover, return, or charge back any of the items listed in the agreement, regardless of who was in possession of them, after the $104,483.78 was wired. The trial court interpreted the "no further recourse" language as intending to bring finality to the parties dealings with respect to the items identified in the contract. The court determined that the absence of any directive to plaintiff as to what action it could take on the eleven checks in its possession did not override the agreement not to take further recourse.
 {¶ 27} The trial court concluded that plaintiff's attempted "late return" of the items constituted a breach of the contract, essentially concluding that such was tantamount to pursuing further recourse. Thus, the trial court did not determine, as plaintiff contends, that the contract permitted plaintiff to make "late return" of the items before the contract was executed, but not after. As argued by defendant, the trial court undoubtedly recognized that plaintiff had "finally paid" all of the items, including the two at issue here, when it failed to return or dishonor them prior to the statutory "midnight deadline," and that no matter when plaintiff returned the undisputed "late returns" to defendant, at the time the contract was executed the loss had already been borne by plaintiff. Anything upsetting the allocation of loss that existed on the date the contract was executed constituted breach of the "no further recourse" provision of the contract.
 {¶ 28} Plaintiff similarly mischaracterizes the factual determination made by the trial court in reaching its decision. Plaintiff claims that the trial court resolved conflicting evidence on the issue of when plaintiff returned the drafts to defendant and improperly determined, in contravention of Civ.R. 56, that plaintiff returned the items to defendant after the contract was signed. Contrary to plaintiff's assertion, the trial court did not determine, as a matter of fact, whether plaintiff returned the items before or after the contract was executed. The court concluded only that plaintiff's attempted "late return" of the items constituted a breach of the contract without regard to whether the items were returned before or after the contract was executed. This determination is supported by the record and did not require the court to resolve any conflicting evidence.
 {¶ 29} Plaintiff did not dispute that, at the time the contract was executed, it had "finally paid" the items or that return of the items constituted "late returns" under R.C. 1304.25
and 1304.28. Plaintiff did not dispute that the attempted "late return" of the items would have caused defendant a loss in the amount of $88,622 if defendant had not rejected plaintiff's attempted "late return" of the items. The sole factual finding by the court that the attempted "late return" of the items violated the "no further recourse" provision of the contract was based on the undisputed evidence that, at the time the contract was executed, plaintiff had already borne the loss for the items. Anything occurring after execution of the contract that would have shifted plaintiff's existing loss to defendant was not permitted under the "no further recourse" provision of the contract. If the "late returns" at issue had been transmitted from plaintiff to defendant before the contract was executed, the fact that final payment had already been made by plaintiff before the contract was executed would not have changed.
 {¶ 30} The trial court correctly followed Ohio law in interpreting the contract provisions as a matter of law and did not reconcile any disputed factual issue in reaching its decision. Accordingly, plaintiff's sole assignment of error is overruled.
 {¶ 31} For the foregoing reasons, the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
Lazarus, P.J. Petree, J., concur.