DECISION
{¶ 1} Third-party defendant-appellant, the city of Westerville, appeals from a judgment of the Franklin County Court of Common Pleas granting the summary judgment motion of third-party plaintiff-appellee, Complete General Construction Company.
{¶ 2} This appeal arises out of the city of Westerville's ("Westerville") construction of a bridge over Alum Creek as part of the Polaris/Maxtown Connector road project ("bridge project"). In March 1998, Complete General Construction Company ("Complete General") entered into a contract with Westerville to serve as the general contractor on the bridge project. As contemplated by the contract, Complete General subsequently entered into numerous subcontracts, including one with Koker Drilling Company ("Koker") for the installation of 40 drilled shafts that were required to establish the foundations for the piers that would support the bridge.
{¶ 3} Koker commenced work on its subcontract on July 13, 1998, intending to drill approximately one shaft per day in order to complete the work on schedule. However, the first three shafts that Koker drilled were rejected by Westerville as defective. By late November 1998, Koker had failed to drill even a single shaft that met the requirements of its subcontract. Consequently, Complete General terminated Koker's contract and hired a replacement subcontractor to drill the 40 shafts.
{¶ 4} On December 2, 1998, Complete General sued Koker for breach of contract. On January 25, 1999, Koker filed an answer, together with a counterclaim that asserted claims for breach of contract and unjust enrichment. On April 22, 1999, Complete General responded to Koker's counterclaim by filing a third-party complaint against Westerville for breach of contract, which alleged that Westerville was liable for all or part of any liability Complete General was found to have to Koker. On May 28, 1999, Westerville filed its answer to Complete General's third-party complaint together with a counterclaim. Westerville's counterclaim alleged that Complete General had "failed to honor its indemnification and hold harmless obligations [under sections 1119.06 and 1124.1 of the contract] by failing to resolve the dispute with its subcontractor Koker at no expense to Westerville and asserting affirmative claims against Westerville related to Koker's work."
{¶ 5} On June 19, 2000, Westerville moved for summary judgment on Complete General's third-party complaint. On July 14, 2000, Complete General moved for summary judgment on its claims against Koker and on Koker's counterclaim. However, before the trial court could rule on any of the pending summary judgment motions, Koker voluntarily dismissed its counterclaim. In response, Complete General voluntarily dismissed its third-party complaint against Westerville.
{¶ 6} On May 1, 2001, Westerville filed a motion for summary judgment on its third-party counterclaim seeking to recover the attorney fees it expended in defending against Complete General's third-party complaint. On May 24, 2001, Complete General moved for summary judgment on Westerville's claims against it. On November 13, 2001, the trial court issued a decision denying Westerville's motion for summary judgment, and on January 9, 2002, the court entered final judgment in the case. Westerville appeals from the trial court's decision and entry assigning the following error:
{¶ 7} "The Trial Court Committed Reversible Error By Concluding That The City of Westerville May Not Recover Its Attorney Fees From Complete General Construction Company."
{¶ 8} Preliminarily, because this matter arises out of the trial court's grant of summary judgment pursuant to Civ.R. 56, we review the trial court's determination independently, and without deference. Brown v. Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. In conducting our review, we apply the same standard as the trial court. Maust v. Bank One Columbus, N.A. (1992), 83 Ohio App.3d 103, 107. In accordance with Civ.R. 56, summary judgment may only be granted if, viewing the evidence most strongly in favor of the nonmoving party, no genuine issue of fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can only come to a conclusion which is adverse to the nonmoving party. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64.
{¶ 9} Westerville presents two related but distinct arguments in support of its claim to recover the attorney fees it expended in defending against Complete General's third-party complaint. First, Westerville argues that it is entitled to recover its attorney fees as compensatory damages resulting from Westerville's breach of the hold harmless provisions contained in sections 1119.06 and 1124.1 of the contract. Second, Westerville argues that section 1124.1 expressly requires Complete General to indemnify it for any attorney fees it expends as the result of claims brought by subcontractors. Complete General contends, however, that Westerville has waived its claim to recover its attorney fees as contract damages because it did not present this argument before the trial court. It is true that Westerville did not seek to recover its attorney fees as contract damages in its motion for summary judgment. However, Westerville's complaint plainly requests such relief, and Westerville's memorandum contra Complete General's motion for summary judgment can be read to request such relief. Therefore, we conclude that Westerville has not waived its right to argue that it is entitled to recover its attorney fees as contract damages on appeal.
{¶ 10} In addressing Westerville's claim to recover its attorney fees as contract damages, we initially note that the "American Rule," under which each party is responsible for paying its own attorney fees, Sorin v. Bd. of Edn. (1976), 46 Ohio St.2d 177, 179, does not prevent Westerville from recovering its attorney fees as compensatory damages resulting from a breach of contract. Shanker v. Columbus Warehouse Ltd. Partnership (June 6, 2000), Franklin App. No. 99AP-772. Nonetheless, in order to succeed on its claim to recover its attorney fees as contract damages, Westerville must establish that Complete General breached the hold harmless provisions of either section 1119.06 or 1124.1 when it filed its third-party complaint seeking to hold Westerville liable for any liability it might have to Koker. With respect to section 1119.06, Westerville claims that Complete General's third-party action breached this section because the hold harmless provision of the section required Complete General, as the general contractor, to hold Westerville, as the project owner, harmless for all subcontractor related claims arising out of the bridge project. In support of this argument, Westerville quotes the following portion of section 1119.06:
{¶ 11} "The CONTRACTOR will indemnify and save the OWNER or the OWNER'S agents harmless from all claims growing out of the lawful demands of SUBCONTRACTORS, laborers, workman, mechanics, materialmen, and furnishers of machinery and parts thereof, equipment, tools, and all supplies, incurred in the furtherance of the performance of the WORK. * * *"
{¶ 12} The interpretation of a written contract is a matter of law to be determined by the court. Alexander v. Buckeye Pipe Line Co. (1977), 49 Ohio St.2d 158, paragraph one of the syllabus. The paramount objective in construing such a written agreement is to ascertain the parties' intent. Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989),46 Ohio St.3d 51, 53. The contract must be given a just and reasonable construction that carries out the intent of the parties as evidenced by the contractual language. Skivolocki v. East Ohio Gas Co. (1974),38 Ohio St.2d 244, paragraph one of the syllabus. Absent ambiguity in the contractual language, the parties' intent is to be ascertained solely from the language contained in the document. Kelly v. Medical Life Ins. Co. (1987), 31 Ohio St.3d 130, 132. Of course, the mere fact that parties to a contract adopt conflicting interpretations of the document does not create ambiguity or a basis for interpretation of the contract language where no ambiguity can reasonably be said to exist in the language. Steward v. Champion Internatl. Corp. (C.A.11, 1993),987 F.2d 732, 734. Further, the language of a contract must be construed against the party responsible for its drafting. Tabeling v. CBC Companies, Inc. (Mar. 10, 1997), Stark App. No. 1996CA00175. Here, Westerville is the party responsible for the drafting of the contract at issue.
{¶ 13} When the quoted portion of section 1119.06 is read in isolation, the section does appear to support Westerville's position that Complete General agreed to hold Westerville harmless for all claims made by subcontractors such as Koker. However, the actual meaning of section1119.06 cannot be determined by reading a portion of the section in isolation. Youngstown State Univ. Assn. of Classified Employees v. Youngstown State Univ. (1994), 99 Ohio App.3d 199, 201. Rather, the entire section must be considered in the context in which it appears in the contract. Id. at 202. Section 1119.06 does not stand alone in the contract, but is part of chapter 1119 of the contract, which provides in its entirety as follows:
{¶ 14} "1119. PAYMENTS TO CONTRACTOR
{¶ 15} "1119.1 At least 10 days before each progress payment falls due (but not more often than once a month), the CONTRACTOR will submit to the ENGINEER a partial payment estimate filled out and signed by the CONTRACTOR covering the WORK performed during the period covered by the partial payment estimate and supported by such data as the ENGINEER may reasonably require. If payment is requested on the basis of materials and equipment not incorporated in the WORK but delivered and suitably stored at or near the site, the partial payment estimate shall also be accompanied by such supporting data, satisfactory to the OWNER as will establish the OWNER'S title to the material and equipment and protect his interest therein, including applicable insurance. The ENGINEER will, within 10 days after receipt of each partial payment estimate, either indicate in writing his approval of payment and present the partial payment estimate to the ONWER, or return the partial payment estimate to the CONTRACTOR indicating in writing his reasons for refusing to approve payment. In the latter case, the CONTRACTOR may make the necessary corrections and resubmit the partial payment estimate. The OWNER will, within 30 days of presentation to him of an approved partial payment estimate, pay the CONTRACTOR for the WORK at the rate of 90% of the amount as approved by the ENGINEER. The 10% withheld will be paid upon full PROJECT completion to the OWNERS satisfaction.
{¶ 16} "1119.02 The request for payment may also include an allowance for the cost of such major materials and equipment which are suitably stored either at or near the site.
{¶ 17} "1119.03 Prior to SUBSTANTIAL COMPLETION, the OWNER, with the approval of the ENGINEER and with the concurrence of the CONTRACTOR, may use any completed or substantially completed portions of the WORK. Such use shall not constitute any acceptance of such portions of the WORK.
{¶ 18} "1119.04 The OWNER shall have the right to enter the premises for the purpose of doing WORK not covered by the CONTRACT DOCUMENTS. This provision shall not be construed as relieving the CONTRACTOR of the sole responsibility for the care and protection of the WORK, or the restoration of any damaged WORK except such as may be caused by agents or employees of the OWNER.
{¶ 19} "1119.05 Upon completion of the WORK, the ENGINEER shall issue a letter attached to the final payment request, recommending that the WORK be accepted by the OWNER. The entire balance found to be due to the CONTRACTOR, including the retained percentages, but except such sums as may be lawfully retained by the OWNER, shall be paid to the CONTRACTOR within 30 days of completion and acceptance of the WORK by the OWNER.
{¶ 20} "1119.06 The CONTRACTOR will indemnify and save the OWNER or the OWNER'S agents harmless from all claims growing out of the lawful demands of SUBCONTRACTORS, laborers, workman, mechanics, materialmen, and furnishers of machinery and parts thereof, equipment, tools, and all supplies, incurred in the furtherance of the performance of the WORK. The CONTRACTOR shall, at the OWNER'S request, furnish satisfactory evidence that all obligations of the nature designated above have been paid, discharged, or waived. If the CONTRACTOR fails to do so the OWNER may, after having notified the CONTRACTOR, either pay unpaid bills or withhold from the CONTRACTOR'S unpaid compensation a sum of money deemed reasonably sufficient to pay any and all such lawful claims until satisfactory evidence is furnished that all liabilities have been fully discharged whereupon payment to the CONTRACTOR shall be resumed, in accordance with the terms of the CONTRACT DOCUMENTS, but in no event shall the provisions of this sentence be construed to impose any obligations upon the OWNER to either the CONTRACTOR, his Surety, or any third party. In paying any unpaid bills of the CONTRACTOR, any payment so made by the OWNER shall be considered as a payment made under the CONTRACT DOCUMENTS by the OWNER to the CONTRACTOR and the OWNER shall not be liable to the CONTRACTOR for any such payments made in good faith.
{¶ 21} "1119.7 If the OWNER fails to make payment 30 days after approval by the ENGINEER, in addition to other remedies available to the CONTRACTOR, there shall be added to each such payment interest at the maximum legal rate commencing on the first day after said payment is due and continuing until the payment is received by the CONTRACTOR."
{¶ 22} When section 1119.06 is read in its entirety and in the context of the chapter in which it appears, it is evident that Westerville's reading of the section is grossly overbroad. Section 1119.06
does not require Complete General to hold Westerville harmless for all claims brought by subcontractors, as Westerville contends. Rather, the plain meaning of the section is that Complete General must hold Westerville harmless for claims arising from Complete General's failure to make progress payments or final payment to its subcontractors in accordance with the contract.
{¶ 23} In the present case, Koker's claims alleged that Complete General breached its subcontract with Koker when it terminated the contract for nonperformance, because Koker's inability to complete its work was the result of work site conditions which differed from those anticipated by the contract, Complete General's failure to properly prepare the work site, and Complete General's failure to provide Koker with access to the site, application of unreasonable procedures and specifications to Koker's work, and delay in approving Koker's procedures. Nothing in any of Koker's claims alleged that Complete General failed to make progress payments or final payment to Koker as required by the contract. Consequently, Complete General's attempt to pass any liability it incurred as a result of Koker's claims on to Westerville by filing a third-party complaint against Westerville did not breach the hold harmless provision of section 1119.06.
{¶ 24} Westerville also claims that Complete General breached the hold harmless provision of section 1124.1 when it filed its third-party complaint. Section 1124.1 provides as follows:
{¶ 25} "The CONTRACTOR will indemnify and hold harmless the OWNER and the ENGINEER and their agents and employees from and against all claims, damages, losses and expenses including attorney's fees arising out of or resulting from the performance of the WORK, provided that any such claims, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury or to destruction of tangible property, including the loss of use resulting therefrom; and is caused in whole or in part by any negligent or willful act or omission of the CONTRACTOR, and SUBCONTRACTOR, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable."
{¶ 26} Westerville argues that section 1124.1 required Complete General to hold Westerville harmless for Koker's claims against Complete General, and that Complete General breached this provision when it filed its third-party action against Westerville. Westerville contends that Koker's claims against Complete General are governed by 1124.1 because the claims are "attributable to injury or to destruction of tangible property." Specifically, Westerville argues that Koker's claims are so "attributable" in that Koker's work on the bridge project involved tangible property, in the form of the land into which Koker drilled the shafts, and the steel rebar and concrete used to complete the drilled shafts; that Koker's work resulted in injury or destruction of that tangible property, in the sense that the drilled shafts were unusable as completed by Koker; and that Koker's failure to adequately complete the drilled shafts was the underlying cause of its claims against Complete General.
{¶ 27} In reading section 1124.1 to apply to Koker's claims, Westerville has completely ignored the final clause of the section, 1124.1, which provides that the covered claims must have been "caused in whole or in part by any negligent or willful act or omission of the CONTRACTOR, and SUBCONTRACTOR, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable." (Emphasis added). "Negligent" and "willful" are both legal terms of art that refer to tortious conduct. The presence of these terms in section 1124.1 evidences a clear intent that the section applies only to claims arising, at least in part, from tortious conduct, and not to claims arising solely out of contractual disputes related to the project.
{¶ 28} Here, Koker's claims against Complete General arise entirely out of its contract with Complete General and have no tortious component.[1] Accordingly, Complete General was not obligated by section 1124.1 to hold Westerville harmless for Koker's claims, and Complete General's third-party action against Westerville did not breach the contract.
{¶ 29} Because Complete General's filing of its third-party action against Westerville did not contravene either section 1119.06 or 1124.1 of the contract, Westerville is not entitled to recover the attorney fees it incurred in defending against Complete General's third-party action as contract damages.
{¶ 30} As previously noted, Westerville also contends that section 1124.1 of the contract expressly requires Complete General to indemnify it for the attorney fees it incurred as the result of claims brought by subcontractors. While Westerville is correct that the indemnification provision in section 1124.1 expressly includes attorney fees, such indemnification is required only where the underlying claims fall within the coverage of section 1124.1. Consequently, the indemnification provision of section 1124.1 is inapplicable to Koker's claims for the same reason that the hold harmless provision of the section is inapplicable to Koker's claims; the section applies only to claims which arise, at least in part, from tortious conduct, and Koker's claims arise solely from its contract with Complete General. Thus, Complete General is not obligated to indemnify Westerville for the attorney fees it expended in defending against Complete General's third-party claims alleging that Westerville was liable for any liability that Complete General incurred as a result of Koker's claims.
{¶ 31} Westerville's lone assignment of error is overruled.
{¶ 32} Having overruled appellant's assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
BOWMAN and LAZARUS, JJ., concur.
[1] Although Koker's complaint asserted a claim for unjust enrichment as well as several contract claims, it is well-settled that claims for unjust enrichment sound in contract rather than tort. Donovan v. Omega World Travel, Inc. (Oct. 5, 1995), Cuyahoga App. No. 68251, vacated on other grounds (Oct. 13, 1995); Fed. Deposit Ins. Corp. v. Wabick (Aug. 2, 2002), N.D. Ill. No. 01C8674, ___ F. Supp.2d ___.