DECISION AND JUDGMENT ENTRY {¶ 1} This case is before the court on appeal from the judgment of the Erie County Court of Common Pleas which, on February 7, 2006, granted the motion for summary judgment filed by Auto Owners Insurance Company ("Auto Owners"), and denied the motion for summary judgment filed by appellants, Francis Gleason, his wife, Jean Gleason, and Martha Clemons. For the reasons that follow, we affirm the decision of the trial court.
 {¶ 2} Mr. Gleason and Mrs. Clemons were severely injured in an automobile accident, occurring on January 3, 2002, when the vehicle they were occupying was struck in the rear by Calvin Collier's vehicle. On March 5, 2002, appellants and Jason Stanfield, who was also occupying the subject vehicle, sued Collier, Auto Owners and Nationwide Insurance Company ("Nationwide"). Stanfield's claims were settled and dismissed, as were all claims against Nationwide. With consent from Auto Owners, Mr. Gleason and Mrs. Clemons settled their claims against Collier, each receiving $100,000 through Collier's liability carrier, State Farm. Thereafter, the only remaining parties in this action were Mr. Gleason, his wife, Mrs. Clemons and Auto Owners.
 {¶ 3} Auto Owners insured the vehicle Mr. Gleason and Mrs. Clemons were occupying and provided underinsured motorist ("UIM") coverage in the amounts of $300,000 each person/$300,000 each occurrence. As part of a conditional settlement, Auto Owners paid the Gleasons $100,000 and Mrs. Clemons $100,000. This settlement was conditioned upon appellants' ability to reserve their rights to seek a declaratory judgment regarding the total amount of UIM coverage available to them. Specifically, appellants argued that they were entitled to another $100,000 of coverage from Auto Owners, entitling the Gleasons and Mrs. Clemons to a total award of $300,000 of UIM coverage. Contrarily, Auto Owners argued that it was only required to pay the $200,000 in UIM coverage that it had already tendered to appellants. All parties agree that under no circumstance could Auto Owners be ordered to pay more than $300,000 total in UIM coverage, i.e., the most it would have to pay is an additional $100,000 to appellants.
 {¶ 4} The trial court held that Auto Owners was not liable for any additional UIM coverage and granted its motion for summary judgment. Appellants appeal and raise as their sole assignment of error that "[t]he trial court erred in granting appellee's motion for summary judgment and denying appellants' motion for summary judgment." Accordingly, the only issue on appeal is to determine the amount of UIM coverage owed to appellants pursuant to Auto Owners' policy.
 {¶ 5} As a condition to providing UIM coverage, Auto Owners' policy[1] states in relevant part:
 {¶ 6} "CONDITIONS
 {¶ 7} "5. LIMITS OF LIABILITY.
 {¶ 8} "a. The limit of liability for Underinsured Motorist Coverage expressed in the Declarations as applicable to 'each person' is the limit of the Company's liability for all damages, including damages for expenses, care and loss of services, arising out of bodily injury to or death of one person in any one occurrence and all claims for damages resulting from or arising out of such bodily injury to or death of one person shall collectively be subject to this limit and constitute a single claim; and subject to the above provision respecting each person, the limit of liability for Underinsured Motorist Coverage expressed in the Declarations as applicable to 'each occurrence' is the total limit of the Company's liability for all damages, including for care and loss of services because of bodily injury to or death of two or more persons in any one occurrence."
 {¶ 9} "* * *
 {¶ 10} "c. Any amount payable under the terms of this endorsement because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by all sums paid on account of such bodily injury by or on behalf:
 {¶ 11} "(1) of the owner or operator of the uninsured motor vehicle; and
 {¶ 12} "(2) any other person or organization jointly or severallyliable together with such owner or operator for such bodily injury
including all sums paid under the Bodily Injury Liability Coverage of the policy.
 {¶ 13} "* * *
 {¶ 14} "e. The Limits of Liability are not increased because of the number of:
 {¶ 15} "(1) premium charges in the Declarations;
 {¶ 16} "(2) claims made or suits brought;
 {¶ 17} "(3) persons injured;
 {¶ 18} "(4) automobiles involved in the accident; or
 {¶ 19} "(5) persons to which this coverage applies.
 {¶ 20} "6. SEVERABILITY.
 {¶ 21} "Subject to [Section] 5. LIMITS OF INSURANCE, the coverage provided herein applies separately to each injured person." (Emphasis added.)
 {¶ 22} The policy defines an "underinsured automobile" as one "to which a bodily injury liability bond or insurance policy applies at the time of the accident in at least the minimum amounts required by the financial responsibility law in the state of Ohio, however the limits of liability provided are less than those stated in the Declarations for Underinsured Motorist Coverage." In defining "underinsured automobile," the policy states that an "underinsured automobile shall not include an automobile * * * that is an uninsured automobile." Section 2(c)(5), under "Insuring Agreements." "Uninsured automobile" includes those "to which no bodily injury liability bond or insurance policy applies at the time of the accident in at least the minimum amounts required by the financial responsibility law in the state of Ohio."
 {¶ 23} In addition to the policy language, the version of R.C.3937.18(A)(2), effective September 21, 2000, that applies to Auto Owners' policy stated, in relevant part, that UIM coverage is not "excess insurance" and that the protection afforded is not greater than that which would be available if the liable person was uninsured at the time of the accident. R.C. 3937.18(A)(2) also stated that "[t]he policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured."[2]
 {¶ 24} On appeal, appellants argue that the trial court erred in applying the setoff because (1) the policy language only provides for a setoff from the limits of coverage for sums paid by or on behalf of the owner/operator of an uninsured vehicle, which Collier's vehicle was not; and (2) assuming the policy does provide for a setoff, the policy language does not clearly and unambiguously state how the setoff is to be applied and, in any event, it was not applied in accordance with Ohio case law.
 {¶ 25} Insofar as Collier was underinsured, not uninsured, we agree that Section 5(c)(1), under "Conditions," of Auto Owners' policy does not apply in this instance because appellants received no payments from any owner or operator of an "uninsured" motor vehicle. Nevertheless, we find that Auto Owners' UIM coverage for bodily injury must be reduced by all sums paid by or on behalf of "any other person or organization jointly or severally liable * * * for such bodily injury." Moreover, we note that the version of R.C. 3937.18(A)(2) applicable to this policy mandated that the amount of UIM coverage available to an insured "shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." Accordingly, we find that the payments from Collier, through State Farm, would act to reduce Auto Owners' UIM coverage obligation.
 {¶ 26} With respect to the amount by which Auto Owners' UIM coverage should be reduced, appellants argue that the policy does not clearly and unambiguously state how a setoff is to be applied when there are multiple claimants. Auto Owners, however, argues that the applicable version of R.C. 3937.18(A)(2) specified the manner for setoff when it stated: "policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under applicable bodily injury * * * insurance policies covering persons liable to the insured." Relying on such language, Auto Owners asserts that the appropriate method for set off is to reduce the "available underinsured motorists coverage at a minimum from $300,000 each person/$300,000 each occurrence to $200,00 each person/$200,000 each occurrence."
 {¶ 27} We note that R.C. 3937.18(A)(2) does not specify the method of setoff when there are separate limits of liability for "each person/each occurrence" and when there are multiple insureds with individual claims. Auto Owners' policy, however, states in Section 6, entitled "Severability," under "Conditions," that the coverage provided by the UIM endorsement "applies separately to each injured person." Because of this provision, and because there are multiple insureds, with separate claims, we find that it would be contrary to the terms of the policy for Auto Owners to reduce the collective "each occurrence" limit of liability, rather than the "each person" limit, as a means to determine the amount of UIM coverage owed each insured.
 {¶ 28} In this case, there are two limits of liability specified for UIM coverage, $300,000 "each person" and $300,000 "each occurrence." Pursuant to the terms of the policy, because Mr. Gleason and Mrs. Clemons both suffered bodily injury, two individual claims for UIM coverage exist. Since UIM coverage "applies separately to each injured person," we find that, pursuant to the terms of the policy, each insured[3] is entitled to UIM coverage up to the $300,000 "each person" limit of liability, subject overall to the "each occurrence" limit.
 {¶ 29} Accordingly, we find that UIM coverage applies in this case as follows. The Gleasons are entitled to UIM coverage up to $300,000, which is Auto Owners' "each person" limit of liability. Mrs. Clemons is also entitled up to $300,000 in UIM coverage. The Gleasons and Mrs. Clemons each received $100,000 from the tortfeasor. By reducing the "each person" limit by this amount, the Gleasons and Mrs. Clemons wouldeach be entitled under the terms of the policy to recover up to $200,000 in UIM coverage ($300,000 each person limit, less $100,000 received by each insured from the tortfeasor). Overall, however, Auto Owners is only required to pay a total of $300,000 for "each occurrence." Hence, pursuant to the terms of the policy, even though the Gleasons and Mrs. Clemons seemingly would each be entitled to $200,000 of UIM coverage, their recovery is capped by the "each occurrence" limit of $300,000. Therefore, the actual balance of UIM coverage available to appellants to share is $300,000, or $150,000 each.
 {¶ 30} Our computation, however, does not stop there. Despite the foregoing, we find that, statutorily, Auto Owners is not required to pay any further UIM benefits to appellants. As cited above, the applicable version of R.C. 3937.18(A)(2) states that "underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident." The Ohio Supreme Court has unequivocally held that "[t]he language of R.C. 3937.18(A)(2) * * * makes clear that the statute was intended to ensure that a person injured by an underinsured motorist should never be afforded greater protection than that which would have been available had the tortfeasor been uninsured." Clark v. Scarpelli, 91 Ohio St.3d 271, 2001-Ohio-75, ¶ 7.
 {¶ 31} In this case, had Collier been uninsured, the total amount of uninsured coverage the Gleasons and Mrs. Clemons could have received pursuant to Auto Owners' policy would have been $300,000 "each person"/$300,000 "each occurrence." Because appellants' injuries exceeded the "each occurrence" limit of liability, the most the insureds could have collectively received in uninsured motorist coverage from Auto Owners was $300,000, or $150,000 when divided between them. Appellants each have already received a total of $200,000 in damages from the tortfeasor and Auto Owners. Accordingly, we find that Auto Owners is not required to pay any further UIM benefits to appellants for this occurrence.
 {¶ 32} Based on the foregoing, we find that Auto Owners was entitled to summary judgment as a matter of law. We therefore find that the trial court correctly granted Auto Owners' motion for summary judgment and denied appellants' motion. Appellants' sole assignment of error is found not well-taken.
 {¶ 33} On consideration whereof, the court finds substantial justice has been done the party complaining and the judgment of the Erie County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Erie County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.
[1] Auto Owners' policy number 41-171-639-00 was effective on July 2, 2001.
[2] "(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are offered to persons insured under the policy due to bodily injury or death suffered by such insureds:
"(1) Uninsured motorist coverage * * *
"(2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for insureds thereunder for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage.Underinsured motorist coverage is not and shall not be excess insuranceto other applicable liability coverages, and shall be provided only toafford the insured an amount of protection not greater than that whichwould be available under the insured's uninsured motorist coverage ifthe person or persons liable were uninsured at the time of the accident.The policy limits of the underinsured motorist coverage shall be reducedby those amounts available for payment under all applicable bodilyinjury liability bonds and insurance policies covering persons liable tothe insured." (Emphasis added.)
[3] Mrs. Clemons has her own UIM claim for her bodily injuries; however, because only Mr. Gleason suffered bodily injury, Mr. and Mrs. Gleason's UIM claims are collectively subject to the per person limits of coverage.