BROWN, Admr., et al., Appellants.

v.

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Appellee.

[Cite as *Brown v. Nationwide Mut. Fire Ins. Co.*, 174 Ohio App.3d 694, 2008-Ohio-174.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 07AP–570.

Decided Jan. 22, 2008.

Karr & Sherman Co., L.P.A., and Keith M. Karr, for appellants.

Crabbe, Brown & James, L.L.P., Michael R. Henry, and Matthew R. Planey, for appellee.

---

FRENCH, Judge.

{¶ 1} Plaintiffs-appellants, Timothy J. Brown, individually and as administrator of the estate of Kourtney T. Brown, Kimberly A. Brown, Joshua W. Brown, and Edward Walker (collectively, "appellants"), appeal from the Franklin County Court of Common Pleas' entry of summary judgment in favor of defendant-appellee, Nationwide Mutual Fire Insurance Company ("Nationwide"), on appellants' claims for declaratory judgment, breach of contract, and bad faith. Finding no error in the trial court's entry of summary judgment, we affirm.

{¶ 2} On April 30, 2004, appellant Kimberly Brown was operating a 2004 Pontiac Grand Prix northbound on Interstate 71 in Wayne County, Ohio, with her two minor children, Kourtney T. Brown and appellant Joshua Brown, as her passengers. Kimberly's father, appellant Edward Walker, leased the 2004 Pontiac Grand Prix from GMAC, and Kimberly was driving the vehicle with Walker's permission. This action arises out of a collision that resulted when a motor vehicle operated by Rufus V. Womack crossed the median from the southbound lanes of Interstate 71 and collided with the vehicle that Kimberly was driving. As a result of the collision, Kimberly and Joshua suffered injuries, and Kourtney died. Appellant Timothy Brown ("Timothy") is Kourtney and Joshua's father.

{¶ 3} Womack was insured under an automobile insurance policy issued by Allstate Insurance Company ("Allstate") with liability limits of $100,000 per person and $300,000 per occurrence. As administrator of Kourtney's estate, Timothy settled the wrongful-death claim against Womack for the per-person limit of $100,000 in Womack's Allstate policy. As Joshua's parent and natural guardian, Timothy settled Joshua's personal-injury claim against Womack for the per-person limit of $100,000 in Womack's Allstate policy. Similarly, Kimberly settled her own personal-injury claim against Womack for the per-person limit of $100,000 in Womack's Allstate policy. By their settlements with Allstate, appellants collectively received the per-occurrence limit of $300,000 provided by Womack's policy. Appellants provided notice of their settlements to Nationwide, their own insurer, and Nationwide did not oppose.

{¶ 4} The parties have stipulated that the damages, injuries, and wrongful death that appellants sustained as a result of the subject automobile collision exceed their settlement recoveries from Womack's Allstate policy. Appellants thus sought underinsured-motorist ("UIM") coverage from Nationwide for their damages in excess of the Womack settlements.

{¶ 5} Appellants' claims for UIM coverage concern three separate policies of insurance issued by Nationwide, each of which was in effect on April 30, 2004. First is Nationwide Auto Policy No. 92 34 N 330281, issued to Timothy and Kimberly (the "Brown policy"). The Brown policy declarations list the 2004 Pontiac Grand Prix as a scheduled vehicle, and the policy provides uninsured/underinsured motorist ("UM/UIM") coverage with bodily injury limits of $300,000 per person and $300,000 per occurrence. The Brown policy declarations list Walker as an "Additional Interest Employer" with respect to the 2004 Pontiac Grand Prix.[1]

{¶ 6} The second policy at issue is Nationwide Auto Policy No. 92 34 H 802561, issued to Walker ("Walker auto policy"). Like the Brown policy, the Walker auto policy contains UM/UIM coverage with bodily injury limits of $300,000 per person and $300,000 per occurrence.

{¶ 7} The final policy at issue is Nationwide Personal Umbrella Policy No. 92 34 PU 035597, issued to Walker ("Walker umbrella policy"). The Walker umbrella policy contains an excess-personal-liability limit of $1,000,000 per occurrence. The Walker umbrella policy declarations list Walker's required underlying insurance coverages, limits, and policy numbers, which include the Walker auto policy (and the UM/UIM coverage provided thereby) and a Nationwide homeowner's policy, but not the Brown policy.

{¶ 8} Nationwide denied appellants' claims for UIM coverage, and appellants subsequently filed suit in the Franklin County Court of Common Pleas on February 5, 2005. In their second amended complaint, appellants assert claims for declaratory relief regarding their entitlement to UIM coverage under the above-described policies and claims for breach of contract and bad faith, arising out of Nationwide's refusal to pay UIM benefits.

{¶ 9} On June 27, 2006, appellants and Nationwide filed cross-motions for summary judgment. On June 19, 2007, the trial court granted Nationwide's motion for summary judgment and denied appellants' motion for summary judgment. The trial court concluded that appellants were not entitled to UIM coverage under the Brown policy because they collectively recovered $300,000 from Womack's Allstate policy, which equaled the most they would have collectively been entitled to recover under the Brown policy's per-occurrence limit of $300,000. In support of its judgment, the trial court noted the Supreme Court of Ohio's statement that "a person injured by an underinsured motorist should

---

1. {¶ a} Endorsement 3020, Additional Interest—Employer provides:

{¶ b} "This endorsement extends the coverages stated below to the Interest of the named employer. * * *

{¶ c} "All other provisions of the policy remain unchanged. The naming of this additional Interest does not increase the policy limits."

never be afforded greater coverage than that which would be available had the tortfeasor been uninsured." *Littrell v. Wigglesworth* (2001), 91 Ohio St.3d 425, 430, 746 N.E.2d 1077, citing *Clark v. Scarpelli* (2001), 91 Ohio St.3d 271, 276, 744 N.E.2d 719. The trial court further concluded that neither Walker nor the Brown appellants were entitled to UIM coverage under the Walker umbrella policy. Last, the trial court concluded, as a matter of law, that Nationwide did not act in bad faith by denying appellants' claims for UIM benefits. Accordingly, the trial court entered summary judgment in favor of Nationwide on all of appellants' claims.

{¶ 10} From the trial court's entry of summary judgment, appellants filed a timely notice of appeal. Appellants assert three assignments of error for our review:

> Assignment of Error 1: The trial court prejudicially erred by concluding that the estate of Kourtney Brown, Timothy Brown, Kimberly Brown, and Joshua Brown are not entitled to [UM/UIM] coverage under the Brown auto policy.
>
> Assignment of Error 2: The trial court prejudicially erred by concluding that the [sic] Edward Walker is not entitled to [UM/UIM] coverage under the Walker umbrella policy and the Brown auto policy.
>
> Assignment of Error 3: The trial court prejudicially erred by granting summary judgment on appellants' bad faith claim.

Each of appellants' assignments of error stems from the trial court's entry of summary judgment, and we will address each assignment of error in turn.

{¶ 11} Appellate review of summary judgments is de novo. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265, citing *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. *Maust v. Bank One Columbus, `N.A.* (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765; *Brown,* 87 Ohio App.3d at 711, 622 N.E.2d 1153. We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it. *Coventry Twp. v. Ecker* (1995), 101 Ohio App.3d 38, 41–42, 654 N.E.2d 1327.

{¶ 12} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only when (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving

party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46.

{¶ 13} By their first assignment of error, appellants argue that the trial court erred by concluding that the Brown appellants are not entitled to UM/UIM coverage under the Brown policy. The Brown appellants assert three claims under the Brown policy: (1) Kimberly's bodily injury claim, (2) Joshua's bodily injury claim, and (3) a single claim for all damages arising out of Kourtney's bodily injuries, including all of the statutory wrongful-death beneficiaries' claims. The parties agree, as did the trial court, that each of the Brown appellants is an insured under the Brown policy, either as a named insured or as a relative living in the same household. The parties further agree that, at most, appellants collectively are entitled to UM/UIM benefits of $200,000, thus conceding that Nationwide is entitled to set off at least $100,000 from its per-occurrence limit.

{¶ 14} The sole issue under appellants' first assignment of error is whether, having collectively recovered $300,000 from Womack's Allstate policy, appellants are entitled to recover UIM benefits under the Brown policy, which contains the same per-occurrence limit, but a higher per-person limit, than the Allstate policy. That issue, however, implicates questions regarding whether Womack was an underinsured motorist, regarding Nationwide's right to set off the proceeds appellants received from the tortfeasor's liability policy, and regarding whether appellants may collectively recover more than they would have recovered had Womack been uninsured.

{¶ 15} The Brown policy defines an "uninsured motor vehicle" as "one which is underinsured. This is a **motor vehicle** for which bodily injury liability coverage limits or other security or bonds are in effect; however, their total amount available for payment is less than the limits of this coverage." (Boldface sic.) The Limits and Conditions of Payment in the Brown policy's UM endorsement provide:

> **Our** obligation to pay Uninsured Motorists – Bodily Injury losses is limited to the amounts per person and per occurrence stated in the policy Declarations. The following conditions apply to these limits:
>
> 1. The limit shown:
>
> a) for **bodily injury** for any one person applies to one person's **bodily injury**, including death, and includes all claims resulting from or arising out of that one person's **bodily injury**, including death. Any and all claims, including but not limited to any claim for loss of consortium or injury to the relationship arising from this **bodily injury**, including death, shall be included in this limit. This per person policy limit shall be enforceable regardless of the number of

**insureds**, claims made, vehicles or premiums shown in the Declarations or policy, or vehicles involved in the accident.

b) or **bodily injury** for each occurrence is, subject to the per person limit described in paragraph a) above, the total limit of **our** liability for all covered damages when two or more persons sustain **bodily injury**, including death, as a result of one occurrence. Any and all claims, including any claim for loss of consortium or injury to the relationship arising from this **bodily injury**, including death, shall be included in this limit. This per occurrence policy limit shall be enforceable regardless of the number of **insureds**, claims made, vehicles or premiums shown in the Declarations or policy, or vehicles involved in the accident.

(Boldface sic.) As stated above, the Brown policy declarations provide both per-person and per-occurrence limits of $300,000. The Limits and Conditions of Payment go on to provide:

3. The limits of this coverage will be reduced by any amounts available for payment by or on behalf of any liable parties for all claims, including claims for **bodily injury**, loss of consortium, injury to the relationship, and any and all other claims.

\* \* \*

6. No payment will be made until the limits of all other liability insurance and bonds that apply have been exhausted by payments.

(Boldface sic.)

{¶ 16} The parties here couch their arguments primarily in terms of setoff. While appellants argue that Nationwide is entitled to set off only $100,000 from its $300,000 per-occurrence limit, entitling appellants to an additional $200,000 in UIM coverage, Nationwide contends that it is entitled to set off the entire $300,000 that appellants received from Allstate, thus eliminating appellants' entitlement to UIM benefits.

{¶ 17} In support of their position, appellants rely heavily on *Derr v. Westfield Cos.* (1992), 63 Ohio St.3d 537, 589 N.E.2d 1278, an action that arose from Diana L. Derr's death as a result of injuries she sustained in a motor vehicle collision. As executor of Diana's estate, Edgar C. Derr ("Derr") filed a wrongful-death action on behalf of himself and his and Diana's two minor children. Derr recovered the $100,000 limit of the tortfeasor's liability coverage, and, after payment of expenses, the probate court ordered the settlement proceeds distributed in three equal shares to Derr and his two children. Derr also sought UIM coverage under a policy issued to him by Westfield Companies ("Westfield"), with single-limit UIM coverage of $400,000. Westfield conceded that it owed $300,000, which it paid. Thereafter, Derr brought a declaratory judgment action, alleging

that Westfield was obligated to pay its full $400,000 policy limit despite the $100,000 payment from the tortfeasor's insurer. On cross-motions for summary judgment, the trial court determined that Westfield properly deducted the $100,000 settlement proceeds from its $400,000 limit. The court of appeals affirmed in a split decision and certified a conflict to the Supreme Court of Ohio.

{¶ 18} The Supreme Court stated the certified issue as " '[w]hether an insurer on a single-limit underinsured motorist policy may set off against that single limit of liability the total amount paid by a tortfeasor's insurance, when the claims of each of the claimants taken individually do not reach that limit as reduced by the amount paid to each claimant by the tortfeasor.' " Id., 63 Ohio St.3d at 539, 589 N.E.2d 1278. Based on its decision in *Wood v. Shepard* (1988), 38 Ohio St.3d 86, 526 N.E.2d 1089, the court first found that Derr and his two children had separate wrongful-death claims that could not be subjected to a single per-person limit.

{¶ 19} After determining that Derr and his children each maintained a separate wrongful-death claim, the Supreme Court proceeded to consider the issue of setoff. The Supreme Court acknowledged an insurer's right to set off amounts that its insured receives from the tortfeasor, quoting *James v. Michigan Mut. Ins. Co.* (1985), 18 Ohio St.3d 386, 18 OBR 440, 481 N.E.2d 272, paragraph two of the syllabus:

> "An insurer may apply payments made by or on behalf of an underinsured motorist as a setoff directly against the limits of its underinsured motorist coverage, so long as such setoff (1) is clearly set forth in the terms of the underinsured motorist coverage and (2) does not lead to a result wherein the insured receives a total amount of compensation that is less than the amount of compensation that he would have received if he had been injured by an uninsured motorist."

*Derr*, 63 Ohio St.3d at 540, 589 N.E.2d 1278. After examining the Westfield policy's setoff language, the Supreme Court found ambiguity regarding the manner in which setoff was to be effectuated when multiple claimants present claims for UIM coverage. Construing the policy language in favor of the insureds, the Supreme Court held that Westfield was entitled to set off proceeds from the tortfeasor against the individual wrongful-death claims only to the extent of each claimant's proportional share of those proceeds. In so holding, the Supreme Court endorsed a setoff approach similar to that implemented in *Zelko v. Parsons* (1985), 29 Ohio App.3d 302, 29 OBR 400, 505 N.E.2d 271, where the Eighth District Court of Appeals held that "the insurer must consider all claims separately and may not simply apply a collective setoff against the total limit of [UIM] coverage." *Derr*, 63 Ohio St.3d at 541, 589 N.E.2d 1278.

{¶ 20} Under the Supreme Court's calculation in *Derr*, Westfield was required to pay its $400,000 per-occurrence policy limit even though its insureds had already collectively recovered $100,000 from the tortfeasor. Accordingly, the plaintiffs collectively received a total of $500,000 from the tortfeasor and Westfield, $100,000 more than they would have been entitled to had the tortfeasor been uninsured. Nevertheless, the Supreme Court stated that such a recovery did not run afoul of prior case law or public policy, quoting the following passage from *Zelko*, 29 Ohio App.3d at 304, 29 OBR 400, 505 N.E.2d 271:

> "The language in *James* is interesting from the viewpoint the Supreme Court states the insured should receive no less than he would have received if he had been injured by an uninsured motorist. The Supreme Court chose the phrase 'less than' instead of the phrase 'more than' in limiting compensation to the insured in *James, supra*, thereby leaving the door open when multiple insureds are involved."

*Derr*, 63 Ohio St.3d at 542, 589 N.E.2d 1278.

{¶ 21} Based on *Derr*, appellants contend that Nationwide was required to consider each of the three claims under the Brown policy separately and that Nationwide was permitted to set off against each individual claim only the settlement proceeds apportioned thereto. To the contrary, Nationwide argues that appellants' reliance on *Derr* is misplaced under the facts of this case and the present status of the law. More specifically, Nationwide contends that the enactment of Am.Sub.S.B. No. 20 ("S.B. 20"), effective October 20, 1994, and subsequent case law have discredited the analysis in *Derr* and provide support for the trial court's analysis and ultimate entry of summary judgment.

{¶ 22} S.B. 20 amended R.C. 3937.18 to add the following provision:

> (H) Any automobile liability or motor vehicle liability policy of insurance that includes [UM/UIM] coverages * * * and that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one automobile accident, may, notwithstanding Chapter 2125. of the Revised Code, include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident.

S.B. 20 also amended R.C. 3937.18(A)(2) to provide:

> Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and *shall be provided only to afford the insured an amount of protection not greater than that which would be*

*available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident.* The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.

(Emphasis added.)[2]

{¶ 23} This court expressed doubts about the continuing validity of *Derr* following the enactment of S.B. 20 in *Stewart v. State Auto. Mut. Ins. Co.* (Oct. 7, 1999), Franklin App. No. 98AP–1601, 1999 WL 795680. There, the plaintiff, as administrator of her deceased husband's estate, sought UIM coverage for the decedent's next of kin, who were insured under two insurance policies. The trial court concluded that the terms of the automobile policy at issue limited all next of kin to a single claim against the policy's $100,000 per-person limit, less a setoff of $50,000, representing the collective recovery from the tortfeasor's liability insurer. In reliance on *Derr*, the plaintiff argued that the trial court should have treated each next of kin as having a separate claim against the policy's $100,000 per-person limit, subject to setoff only in the amount of each claimant's proportional share of the proceeds from the tortfeasor's insurer. This court rejected the plaintiff's argument and affirmed, stating:

> * * * [T]he holding in *Derr* is completely discredited by [S.B. 20]. By expressly superceding *Savoie* [*v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809], [S.B. 20] discredited *Wood*, which provided the foundation for both *Savoie* and *Derr.* Further, by its terms, [S.B. 20] overruled the premise upon which the *Derr* set-off rationale 'hinges': that irrespective of unambiguous language in an insurance policy to the contrary, each person who is legally entitled to recover damages for wrongful death under R.C. 2125.02 has a separate claim against the per person limit of liability of the decedent's [UM/UIM] coverage.

We found that the policy in *Stewart* consolidated all claims arising out of the death of one person and subjected that claim to the per-person limit of liability, set off by any money paid by the tortfeasor or the tortfeasor's insurance company.

---

2. {¶ a} The version of R.C. 3937.18 applicable to the policies at issue herein similarly provides, in subsection (C):

{¶ b} "Underinsured motorist coverage in this state is not and shall not be excess coverage to other applicable liability coverages, and shall only provide the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable to the insured were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured."

{¶ 24} Here, the parties agree that the Brown policy validly consolidates all claims arising out of Kourtney's death to a single claim, subject to the per-person limit of $300,000. Thus, although *Stewart* expresses the view that S.B. 20 discredited *Derr*, despite the fact that *Derr* has not been expressly overruled, *Stewart* does not answer the question before us.

{¶ 25} Nevertheless, we similarly note that S.B. 20 discredits the Supreme Court's analysis in *Derr* because the court's analysis in *Derr* resulted in the UIM claimants recovering more than they would have recovered had the tortfeasor been uninsured. In *Derr*, the Supreme Court noted that *James* mandated only that an insured receive no less in UIM coverage than he would have received had he been injured by an uninsured motorist, but did not preclude the insured from receiving *more* compensation than if he had been injured by an uninsured motorist. As amended by S.B. 20, R.C. 3937.18(A)(2) expressly precluded such a result, stating that UIM coverage shall not provide protection "greater than that which would be available under the insured's [UM] coverage if the person or persons liable were uninsured at the time of the accident."

{¶ 26} In disregarding *Derr* and finding that appellants were not entitled to UIM coverage under the Brown policy, the trial court relied on the Ohio Supreme Court's opinion in *Littrell*, in which the Supreme Court decided three pending cases involving issues of statutory setoff against UIM coverage. 91 Ohio St.3d 425, 746 N.E.2d 1077. For purposes of our discussion here, we focus on the first of those cases, *Littrell*, which arose from an automobile collision between a vehicle driven by John Littrell Jr. and owned by Stella Pratt and a vehicle driven by tortfeasor Jeffrey Wigglesworth. Littrell, Pratt, and Wigglesworth were killed in the accident. As occupants of the Pratt vehicle, Littrell's wife, Ina, and children, Dennis and Suzanne, suffered injuries. Wigglesworth had $1,300,000 in available liability coverage, which was tendered and accepted in settlement of all claims against Wigglesworth and his insurer. The $1,300,000 was allocated to the five occupants of the Pratt vehicle, who also sought UIM coverage under an automobile policy issued by Westfield Insurance Company, which contained a single policy limit of $500,000 per accident.[3]

{¶ 27} Before reviewing the *Littrell* plaintiffs' entitlement to UIM coverage, the Supreme Court reviewed its then-recent holding in *Clark*, 91 Ohio St.3d 271, 744 N.E.2d 719. In *Clark*, the plaintiff sought UIM coverage on behalf of herself and other statutory wrongful-death beneficiaries for damages arising out of her son's death in a one-car collision. The plaintiff's UIM policy had limits of

---

3.  From the settlement proceeds, the Estate of John Littrell Jr. received $415,000, the Estate of Stella Pratt received $275,000, Ina Littrell received $460,000 on her personal-injury claim, and Dennis, and Suzanne Littrell each received $75,000 on their personal-injury claims.

$100,000 per-person and $300,000 per occurrence, and the tortfeasor's liability carrier settled for the $100,000 per-person limits of its policy. Like the trial court and the court of appeals, the Supreme Court found that the plaintiff's UIM policy unambiguously restricted all wrongful-death claims to a single per-person limit. Thus, the Supreme Court faced the issue of setoff under the S.B. 20 version of R.C. 3937.18 where the per-person limit of the tortfeasor's liability coverage equaled the per-person limit of the plaintiff's UIM coverage. The Supreme Court held that "[f]or the purpose of setoff, the 'amounts available for payment' language in R.C. 3937.18(A)(2) means the amounts actually accessible to and recoverable by an underinsured motorist claimant from all bodily injury liability bonds and insurance policies (including from the tortfeasor's liability carrier)." *Clark*, 91 Ohio St.3d 271, 744 N.E.2d 719, syllabus. The court noted that the original purpose of UIM coverage was to ensure that a UIM claimant would receive at least the same amount of total compensation as he would have received had he been injured by an uninsured motorist. The court also emphasized that the statutory language of R.C. 3937.18(A)(2), as amended by S.B. 20, ensures that "a person injured by an underinsured motorist should never be afforded greater protection than that which would have been available had the tortfeasor been uninsured." Id. at 276, 744 N.E.2d 719. Because the wrongful-death beneficiaries collectively received $100,000 from the tortfeasor's insurer, that amount was set off from the UIM policy's per-person limit of $100,000, precluding access to UIM benefits.

{¶ 28} In *Littrell*, 91 Ohio St.3d 425, 746 N.E.2d 1077, the Supreme Court resolved questions regarding entitlement to UIM benefits "[i]n light of the reasoning concerning R.C. 3937.18(A)(2) set forth in *Clark*." *Littrell*, 91 Ohio St.3d at 430, 746 N.E.2d 1077. In its consideration of UIM coverage under the Westfield policy for the occupants of the Pratt vehicle, the Supreme Court began with the proposition that "[h]ad the tortfeasor been an uninsured motorist, the maximum amount available to the five occupants of the Pratt [vehicle] would have been $500,000," the single limit of the Westfield UIM policy. Id. at 431, 746 N.E.2d 1077. The court then considered the "amount available for payment" from the tortfeasor and, in doing so, considered the collective recovery of the *Littrell* plaintiffs claiming under the Westfield policy. Because claimants recovered $1,300,000 from Wigglesworth's liability carrier, the court found that $1,300,000 was the amount available for payment. The court held that "[a]s [the $1,300,000 available for payment from Wigglesworth's insurer] exceeds the amount available from the Westfield policy, the occupants of the Pratt [vehicle] are not entitled to underinsured motorist benefits from Westfield." [4] Id.; see

---

4. {¶ a} The Supreme Court also noted that the availability of UIM coverage might have been different had the occupants of the Pratt vehicle been insured under separate policies rather than the single Westfield policy, stating:

also *Kuchmar v. Nationwide Mut. Ins. Co.*, Hamilton App. No. C–060866, 2007-Ohio-6336, 2007 WL 4208719 (setting off total amount of plaintiffs' collective recovery from tortfeasor from per-occurrence UIM limit). Such an analysis is consistent with the General Assembly's mandate that an insured's recovery be equal whether he was injured by an uninsured motorist or an underinsured motorist. See *Clark*, 91 Ohio St.3d at 279, 744 N.E.2d 719, fn. 3.

{¶ 29} The Supreme Court followed *Littrell* in its recent decision in *Webb v. McCarty*, 114 Ohio St.3d 292, 2007-Ohio-4162, 871 N.E.2d 1164. There, William Webb, individually and as executor of the estate of Deborah Ann Webb, sought UIM coverage under a policy with limits of $100,000 per person and $300,000 per occurrence. Webb settled his individual personal-injury claim against the tortfeasor for $25,000. Webb also settled the estate's claims against the tortfeasor for $269,836.08, which was paid from the tortfeasor's automobile liability policy and was divided equally between Webb and his two children. The tortfeasor's policy contained a coverage limit of $300,000 per accident. Based on *Littrell*, the Supreme Court summarily rejected a limits-to-limits comparison and stated that "in a case involving multiple claimants, UM coverage would be compared to the amount paid under an automobile liability policy." Id. at ¶ 4. While the court was unable to determine how they reached the number, the parties agreed that the amount paid under the tortfeasor's policy was $269,836.08, which the court found was the amount available for payment. The Supreme Court did not consider the individual wrongful-death beneficiaries' claims, nor did it discuss the division of the settlement proceeds among the wrongful-death claimants. Rather, the Supreme Court compared the total amount paid under the tortfeasor's policy with the per-accident limit of the UIM coverage. Accordingly, the Supreme Court determined that "Webb and other claimants under his policy are underinsured to the extent that his UM policy's per-accident limit, $300,000, exceeds the amount available for payment," subject to the policy's per-person limit of $100,000. Id., 114 Ohio St.3d 292, 2007-Ohio-4162, 871 N.E.2d 1164, at ¶ 5.

{¶ 30} Even were we to agree that *Derr* still validly stands for the proposition that at least as a starting point, separate claims must be treated separately, and that an insurer facing multiple claims for UIM benefits under a single policy may set off only each claimant's actual proportion of the recovery from the tortfeasor from that claimant's per person UIM limit, the S.B. 20 amendments to R.C. 3937.18(A)(2) and *Littrell* nevertheless require affirmation of the trial court's entry of summary judgment. In a case such as this, where the claimants'

---

{¶ b} "This case illustrates well the *multiple*-policies issue. If each of the five occupants of the Pratt [vehicle] had had a separate policy of insurance, then each would have had coverage under his or her own policy up to the single policy limit less any sums received from the tortfeasor's policy." (Emphasis sic.) *Littrell*, 91 Ohio St.3d at 431, 746 N.E.2d 1077, fn. 7.

recovery, either individually or collectively, would exceed the amount that they would have recovered had their injuries been caused by an uninsured motorist, we must conclude, as a matter of law, that no UIM coverage is available.

{¶ 31} Various post-*Littrell* appellate court decisions, including *Luckenbill v. Hamilton Mut. Ins. Co.* (Aug. 31, 2001), Darke App. No. 1524, 2001 WL 991957, and *Gleason v. Collier*, Erie App. No. E–06–019, 2006-Ohio-6293, 2006 WL 3457845, upon which the trial court relied, support our conclusion here. In *Luckenbill*, the Second District Court of Appeals extensively and carefully reviewed the Supreme Court's opinions in *Derr*, *Clark*, and *Littrell* in its consideration whether collective setoff applied to claims for UIM benefits by multiple claimants under a single-limit UIM policy. The Second District described the Supreme Court's treatment of the *Littrell* claims as "perplexing because the Court appears to have considered the claims of multiple parties (even those with individual and separate claims, as opposed to derivative claims) as a collective entity, based solely on whether the claims were asserted under a single policy of insurance." Id. at *11. The Second District found the court's approach in *Littrell* to be inconsistent with the Supreme Court's earlier analysis in *Derr* and *Motorist Mut. Ins. Co. v. Andrews* (1992), 65 Ohio St.3d 362, 604 N.E.2d 142. Ultimately, however, despite its emphatic disagreement with *Littrell*, the court stated: "[W]e feel compelled to follow the most recent decision of the Ohio Supreme Court." Id. at *16. Accordingly, the court applied *Littrell* and held that the claimants were not entitled to recover UIM benefits because they had collectively received from the tortfeasor's insurers the amount they would have collectively received had the tortfeasor been uninsured.

{¶ 32} In *Gleason*, the Sixth District Court of Appeals addressed a scenario quite similar to that presently before this court. *Gleason* involved two claims for UIM benefits under a single policy issued by Auto Owners Insurance Company with UIM limits of $300,000 per person and $300,000 per occurrence. Each claimant had already recovered the $100,000 per-person limit from the tortfeasor's liability insurer. Auto Owners also paid each of the claimants an additional $100,000, but the claimants argued that they were entitled to another $100,000 in UIM benefits from Auto Owners.

{¶ 33} On appeal, the Sixth District considered the insureds' claims separately and determined that each was entitled to coverage up to the $300,000 per-person limit of the UIM coverage. The court then reduced the $300,000 per-person limit for each insured by the $100,000 that each insured received from the tortfeasor and found that each would be entitled to recover up to $200,000 in UIM coverage, subject to the policy's per-occurrence limit of $300,000. "Hence, pursuant to the terms of the policy, even though the [claimants] seemingly would each be entitled to $200,000 of UIM coverage, their recovery is capped by the 'each occurrence'

limit of $300,000. Therefore, the actual balance of UIM coverage available to appellants to share is $300,000, or $150,000 each." Id., 2006-Ohio-6293, 2006 WL 3457845, at ¶ 29.

{¶ 34} The Sixth District did not end its analysis there, however, stating: "Despite the foregoing, we find that, statutorily, Auto Owners is not required to pay any further UIM benefits to appellants." Id. at ¶ 30. The court reiterated the Ohio Supreme Court's statement in *Clark* that the S.B. 20 version of R.C. 3937.18 ensures that a person injured by an underinsured motorist should not be afforded greater protection than that which would have been available had he been injured by an uninsured motorist. Therefore, the court determined that had the tortfeasor been uninsured, the claimants could have received, at most, the $300,000 per-occurrence policy limit, or $150,000 when divided between them. Because the claimants had already recovered more than $150,000 each ($100,000 each from the tortfeasor and an additional $100,000 each from Auto Owners), the court found that Auto Owners was not required to pay any further UIM benefits.

{¶ 35} Although appellants attempt to distinguish *Gleason* by arguing that the claimants there were entitled to no further UIM benefits only because Auto Owners had already paid $200,000, the same amount that appellants seek here, the court's opinion does not support appellants' argument. Nowhere does the Sixth District suggest that the claimants in *Gleason* were, in fact, entitled to the $200,000 that Auto Owners paid. Rather, the court concluded that the claimants were entitled only to split $100,000 in addition to the collective $200,000 paid by the tortfeasor so that their recovery would not exceed what they could have received had the tortfeasor been uninsured. Thus, we are unpersuaded by appellants' attempt to distinguish *Gleason*.

{¶ 36} Upon review, we find ourselves compelled to apply the analysis set forth in *Littrell* and subsequently applied in various appellate cases, including *Luckenbill* and *Gleason*. Had Womack been uninsured, appellants, collectively, could have recovered up to $300,000 in UM benefits, representing the Brown policy's per-occurrence limit. Appellants have already recovered $300,000 from the Womack Allstate policy. Any further recovery of UIM benefits would blatantly disregard the Supreme Court's analysis in *Littrell* and *Webb*. Accordingly, we find no error in the trial court's entry of summary judgment in favor of Nationwide on appellants' claims for UIM benefits under the Brown policy. Thus, we overrule appellants' first assignment of error.

{¶ 37} By their second assignment of error, appellants contend that the trial court erred by concluding that Walker is not entitled to UM/UIM coverage under the Walker umbrella policy and the Brown policy.

{¶ 38} The Walker umbrella policy's UM endorsement provides:

It is agreed that this endorsement is subject to the terms and conditions of the uninsured motorists coverage included in an underlying policy or policies of insurance described in the Declarations except as modified herein.

We will pay up to your Personal Umbrella policy's limit of liability the amount that an insured is legally entitled to recover from the owner or driver of an uninsured motor vehicle. Damages must result from an accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle. The following conditions apply:

1. You must maintain an underlying insurance policy or policies described in the Declarations which provide uninsured motorists coverage with the listed underlying limits.

2. We shall be liable only for damages in excess of the sum of:

a. the amount received from your required underlying uninsured motorists coverage; and

b. the total amount received because of the loss from, or on behalf of, the liable party; but not less than the amount of such underlying limits.

3. The total limit of our liability for the coverage provided in this endorsement shall be as shown in the Declarations.

4. This coverage will apply only to losses that are payable by your underlying coverage.

5. If the insured dies, we will pay this amount to the insured's legal representative.

{¶ 39} The Walker umbrella policy declarations include a Schedule of Required Underlying Insurances, which lists the Walker auto policy and a homeowner's policy but does not list the Brown policy. It is undisputed that neither the Walker auto policy nor the homeowner's policy provides coverage for the subject accident. Nevertheless, appellants argue that because section four limits coverage to losses "payable by your underlying coverage" but does not refer to "required" underlying coverage or coverage "described in the Declarations," the Brown policy provides Walker with underlying coverage that triggers coverage under the Walker umbrella policy.

{¶ 40} The trial court rejected appellants' position. First, having concluded that no UIM coverage was available to any insured under the Brown policy, the trial court found that Walker was not entitled to recover under the Brown policy. Based on our reasoning with respect to appellants' first assignment of error, we concur that Walker was not entitled to recover under the Brown policy. Second, viewing the Walker umbrella policy as a whole and finding no ambiguity in its UM endorsement, the trial court found that the underlying coverage referred to in section four is the required UM/UIM coverage in the Walker auto policy, as

listed in the policy declarations. Because the Walker auto policy concededly provides no UIM coverage in this case, the trial court determined that Walker was not entitled to UIM coverage under his umbrella policy.

{¶ 41} On appeal, appellants argue that the trial court erred by failing to construe the Walker umbrella policy in favor of appellants and by reading into the UM endorsement a requirement that UM/UIM coverage in an underlying policy described in the declarations must apply before the umbrella policy's excess coverage becomes available. Nationwide, on the other hand, contends that the Walker umbrella policy unambiguously requires that before excess coverage becomes available, the loss must be covered under one of the required coverages listed in the policy declarations. Upon review of the parties' arguments and the relevant policy language, we agree with Nationwide and find no error in the trial court's analysis.

{¶ 42} First, the Walker umbrella policy provides that UM coverage thereunder "is subject to the terms and conditions of the [UM] coverage included in an underlying policy or policies of insurance *described in the Declarations* except as modified [by the UM endorsement]." (Emphasis added.) Next, the Walker umbrella policy's UM endorsement expressly provides coverage only for damages in excess of "the amount received from your *required* underlying [UM] coverage." (Emphasis added.) While appellants argue that such language merely establishes a contractual floor for Nationwide's liability, we find that the cited condition necessarily presupposes the availability of coverage for the loss from the required underlying UM/UIM coverage. In this case, the required underlying UM/UIM coverage, as set forth in the Walker umbrella policy declarations, stems solely from the Walker auto policy, which provides no coverage applicable to the subject accident. Reading the Walker umbrella policy and, specifically, its UM endorsement in its entirety, it is clear that coverage arises thereunder only where the loss was first payable by the underlying coverages listed in the policy declarations. The policy requires the insured to maintain the policies set forth in the declarations with specified limits, limits coverage to an amount in excess of the coverage obtained under the policies set forth in the declarations, and generally makes coverage subject to the terms and conditions of the policies set forth in the declarations.

{¶ 43} The fact that section four refers to "underlying coverage" rather than "required" coverage or coverage "described in the Declarations" does not create ambiguity in the UM endorsement. Nor does that condition modify the requirement that UIM coverage under the umbrella policy is subject to the terms and conditions of the UIM coverage provided by the underlying policies described in the declarations. Last, appellants' reference to the policy's bankruptcy condition in the Walker umbrella policy does not create ambiguity about the meaning of

"underlying coverage." The bankruptcy provision provides that "Bankruptcy or Insolvency of * * * another insurance carrier providing underlying coverage will not cause the Insurance provided by this policy to replace such underlying coverage. The coverage provided by this policy will apply as if the underlying coverage was valid and collectible." While that provision indicates that another insurer may issue underlying coverage, it does not support appellants' argument that such coverage need not be listed in the Schedule of Required Underlying Insurances in the Walker umbrella policy declarations before such an underlying policy provides a basis for the extension of excess coverage.

{¶ 44} Appellants identify, and this court's research reveals, no Ohio case law finding ambiguity in the language utilized in the Walker umbrella policy's UM endorsement. To the contrary, this court has previously considered the language contained in the Walker umbrella policy and concluded that UIM coverage under the umbrella policy arises only where the plaintiffs are first entitled to UIM coverage under one of the underlying policies listed in the umbrella policy's declarations. See *Pyros v. Loparo*, Franklin App. No. 03AP–1146, 2005-Ohio-577, 2005 WL 362528, at ¶ 24. Finding no ambiguity in the Walker umbrella policy, we apply the plain meaning of the contractual language. See *Wallace v. State Farm Mut. Ins. Co.*, Fulton App. No. F–07–012, 2007-Ohio-6373, 2007 WL 4216132, at ¶ 15, citing *Moccabee v. Progressive Ins. Co.* (Oct. 9, 1998), Huron App. No. L–98–1069, 1998 WL 700670. Here, because neither of the underlying policies listed in the Walker umbrella policy's declarations provides coverage for the subject accident, no coverage under the Walker umbrella policy is triggered. Accordingly, we find no error in the trial court's grant of summary judgment on appellants' claims regarding entitlement to coverage under the Walker umbrella policy. Therefore, we overrule appellants' second assignment of error.

{¶ 45} Last, in their third assignment of error, appellants contend that the trial court erred by entering summary judgment in favor of Nationwide on appellants' bad-faith claim. An insurer fails to act in good faith where it denies a claim and such denial "is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 644 N.E.2d 397, paragraph one of the syllabus. A lack of reasonable justification exists where an insurer refuses to pay a claim in an arbitrary or capricious manner. *Nationwide Ins. Ent. v. Progressive Specialty Ins. Co.*, Franklin App. No. 01AP–1223, 2002-Ohio-3070, 2002 WL 1338791, at ¶ 19, citing *Hart v. Republic Mut. Ins. Co.* (1949), 152 Ohio St. 185, 188, 39 O.O. 465, 87 N.E.2d 347. Having determined that appellants were not entitled to UIM coverage under the Nationwide policies at issue here and that Nationwide appropriately denied coverage, we find no error in the trial court's entry of

summary judgment in favor of Nationwide on appellants' claims for bad faith. Accordingly, we overrule appellants' third assignment of error.

{¶ 46} Having overruled appellants' three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

Judgment affirmed.

McGRATH, P.J., and BROWN, J., concur.